## GILMORE HAYS *vs.* W. W. MILLER, *et al.*

Our Statute, preventing a concurrent action for the recovery of the mortgage debt, pending a foreclosue suit, is in derogation of common law, and to be strictly construed, so far as it restricts the remedy.

Its object was to avoid a multiplicity of suits and save expenses; to accomplish in one suit what, formerly, could only be attained by two actions.

When the judgment is unsatisfied by a sale of the mortgaged property, under the copy of order of sale, provided by statute, it is the duty of the sheriff to proceed at once, under the copy of order of sale, to make such further levy and sale of the mortgagor's property subject to execution as may be required to satisfy the judgment. When the whole amount of the debt, secured by the mortgage, is due, judgment may be rendered therefor, to have the same effect, as a lien, or other judgment, only differing in the manner of being satisfied. Sec. 403, Practice Act, 1859-60.

Our statute relating to mortgages is taken from Indiana, differing from California, and still less like that of New York.

A simple decree for the sale of the mortgaged premises does not constitute a lien on property outside the mortgage, and cannot be amended, *nunc pro tunc*, so as to prejudice a prior mortgage or incumbrance on other property of the mortgagor.

Judgments *nunc pro tunc* are only allowed in furtherance of justice—never to work injustice.

Hewitt, C. J., rendered a separate opinion holding if that no lien could be obtained on property not mentioned in the mortgage until a deficiency in the satisfaction of the judgment is ascertained by a sale of the mortgaged property.

Error to the Second Judicial District.

Opinion by WYCHE, Associate Justice.

This case is brought here on a writ of error from the Second Judicial District, from the judgment of the Court confirming, at March term, 1861, a sale made in favor of W. W. Miller, and a refusal, at the same term, to confirm a sale made in favor of Gilmore Hays.

The facts necessary to a proper understanding of the case are the following:

On the 20th Oct., 1857, Moses Hurd gave his note for $1000.00 to Wm. W. Miller, the defendant in error, and to secure the same, on the following day, the said Hurd and wife executed and delivered to Miller a mortgage on certain lands. At the March term, 1859, of the Court below, the mortgage was foreclosed by Miller, and the following decree entered:

"It is therefore considered by the Court, that the said Moses Hurd and Mary Ann Hurd, and all persons claiming under them, or any or either of them, may be barred and foreclosed of all right, claim, lien and equity of redemption in the premises set forth in plaintiff's complaint filed in this action; that the said premises be sold according to law, and that the said Wm. W. Miller, plaintiff, may be paid out of the money arising from said sale, the principal sum of one thousand dollars and its interest, as aforesaid, from the 20th Oct., 1857, until the date hereof, to be computed by the clerk, and the amount, that is to say, the sum of thirteen hundred and eighty-six dollars and thirty-seven cents, to draw interest at the legal rate of ten per cent. per annum until paid, and that execution may issue therefor, together with the costs and expenses herein taxed, at seven dollars and forty-five cents."

A transcript of the judgment, within twenty days, was, according to law, lodged with the auditor of Thurston county, where the mortgaged premises and other lands of Hurd, now in dispute, lie.

Sept. 2, 1859, Hurd and wife executed a mortgage to Gilmore Hays on certain lands situate in Thurston county, to secure a note given by Hurd to Hays of that date, for $662, which mortgage was duly recorded. At March term, 1860, of said Court, Hays foreclosed his mortgage and obtained a judgment for the sale of the mortgaged premises, and for the sale of other property to satisfy the deficiency, if any existed upon a sale of the mortgaged premises. Directly after, Miller and Hays both had executions issued, and sold the lands embraced in their several mortgages. At Sept. term, 1860, the Court refused to confirm either sale, for reasons stated, and at the same term made the following order:

"The Court further directs that the respective parties be permitted to amend their judgments as to form, and that the order of sale shall be as provided for in Sec. 403 of the act relating to foreclosure of mortgages, and that the same be entered *nunc pro tunc.*"

At the same term both parties amended their judgments, and January 22, 1861, execution issued on Miller's judgment, and January 24, 1861, execution issued on Hays' judgment. Feb. 28, 1861, the premises described in Miller's judgment was sold according to law, Miller being the purchaser as the highest and best bidder; and the same day the premises described in Hays' mortgage were sold, Hays being the highest and best bidder. A balance remaining due to Miller on his judgment after sale, the sheriff, on the same day, by order of Miller, levied upon the lands described in the mortgage to Hays, both of which sales and levy were returned to the March term, 1861, of said District Court for confirmation; at which term of the Court the sale made to Miller was confirmed, and the sale to Hays was set aside, Miller objecting to the confirmation on the ground that his judgment obtained at March term, 1859, and amended at Sept. term, 1860, was a prior lien on the premises contained in Hays' mortgage, to both of which judgments of the Court, Hays excepted.

Upon this statement of facts the Court is called upon to construe the act for the foreclosure of mortgages, Statutes W. T., page 86, laws 1859-60, and to determine: 1. Whether, in foreclosures under Sec. 403 of said act, the Court may render such judgment as will, from its rendition, be a lien on other land not contained in the mortgage. 2. Whether such a judgment was rendered by the Court in the case of Miller *v.* Hurd and wife at the March term, 1859, of said Court. 3. As to the power of the Courts to amend judgments, and to determine the rights of the parties in this case under the rulings of the Court on these questions.

Sec. 403 of the act provides: "When there is an express agreement, for the payment of the sum of money secured, contained in the mortgage or any separate instrument, the Court

shall direct in the order of sale, that the balance due on the mortgage and costs, which may remain unsatisfied after the sale of the mortgaged premises, shall be levied on any property of the mortgage debtor;" and Sec. 404 provides that "a copy of the order of sale and judgment shall be issued and certified by the clerk, under the seal of the Court, to the sheriff, who shall thereupon proceed to sell the mortgaged premises, or so much thereof as may be necessary to satisfy the judgment, interest and costs, as upon execution; and if any part of the judgment, interest and costs remain unpaid, the sheriff shall forthwith proceed to levy the residue of the other property of the defendant."

Do these sections considered together authorize the Court, upon a foreclosure, to render such a judgment as will operate from that date as a lien on said property outside the mortgage?

By the common law, and in many if not most of the States, a mortgagee, while he can have only one satisfaction, "may exercise all his rights at the same time, and pursue his remedy in equity upon the mortgage and his remedy at law upon the bond or covenant accompanying it concurrently." 4th Kent, page 195. Our statute prohibits concurrent action in such cases, and in the matter of remedies is a restraining act, and in derogation of common law rights, and as such must be strictly construed. But for the prohibition in the act, a mortgagee might prosecute to the same term of the Court a foreclosure on his mortgage and a suit at law upon his note, and in such case the decree would bind the mortgaged lands, and the judgment at law would be a lien on other real property of the defendant. Did the Legislature, then, intend to deprive the mortgagee of these concurrent liens which, but for the prohibition in the statute, he might acquire? or did it merely intend to prevent multiplicity of suits and costs, and enable the mortgagee in one suit to accomplish, substantially, what previously could be attained only by two actions?

In sales under the foreclosure act of this Territory, no execution issues, but a copy of the order of sale and judgment issues under the seal of the Court to the sheriff, who proceeds to

sell in accordance therewith, in the words of the act, "as upon execution."

This copy then, in this case, is the execution. An execution is the child of the judgment. It can be no broader, and can be levied upon no property other than such as may be taken to satisfy the judgment. Can the sheriff then, under the order of sale directing him forthwith to proceed to levy the residue of other property of the defendant, levy upon and sell the lands of the defendant, in case personal property cannot be found, before making a return to the Court of the sale of the mortgaged premises? If such levy and sale can be made, then it is because such land is covered by the judgment, and the judgment is such judgment as "is authorized by law to be levied upon real estate;" and if so, then Sec. 234, page 51, laws 1859–60, comes in and declares that any judgment which may "be levied upon real estate," shall be a lien on real property for five years, if a certified transcript of the judgment be lodged with the county auditor, according to law.

The copy of the order of sale and judgment is the authority of the sheriff for selling the mortgaged premises, and the same authority directs him, if the mortgaged premises do not satisfy the debt, forthwith to proceed to levy the residue of the other property of the defendant; and under this express direction to the sheriff, it is as much his duty to levy upon and sell other property if there be a deficiency after the sale of the mortgaged lands, as it is his duty to sell the mortgaged lands, and he is no more required to make return to the Court before sale in one case than in the other. Section 403 of the act under consideration, in saying " shall be levied," means shall be collected, and Sec. 404 in saying "to levy the residue," means to collect the residue. See words "levy" and "levied" in Webster's, and the word "levy" in Bouvier's Law Dictionary. These words are sometimes used in a more restricted sense, but if they are used in the sense here indicated, in this connection it follows that when the sheriff is directed "forthwith to proceed to levy the residue," he is directed forthwith to collect the residue, and as a sale is necessary to collect, except in voluntary payments, he

is directed to forthwith sell according to law, and no return to the Court is required, except a return for confirmation, if it be real property sold.    Another consideration sustains this view. If the sheriff must return to the Court his levy for the residue before he can sell, the requirement is equally binding, whether the levy is upon real or personal property.    Did the Legislature intend to tie up personal property by such levy until, in many cases, the expense of keeping the same would, to a good degree, consume the property?

A fair and equitable construction of the act under consideration, leads the Court to the conclusion that in a foreclosure suit under Sec. 403 of the act, where the whole sum is due, the Court may render a general judgment for the whole amount due, which will be a lien from that date on all the real property of the defendant liable to execution, and the judgment will have the force and effect of other general judgments, except as to the manner of satisfying the same, and in this matter the statute must be followed; and under the order of sale to the sheriff, he must first sell the mortgaged premises according to law, and if any deficiency exists, he must then levy upon and sell according to law the personal property of defendant subject to execution, and if none, then levy upon and sell all real property of defendant subject to execution, and in the case of the sale of real property, to report the sale, as well as the mortgage sale, to the next term of Court for confirmation.

Decisions have been quoted from New York, sustaining a different doctrine, but the statute of that State is unlike ours. The statute of California is more like ours, but even there a party had to get out a separate execution to sell for the deficiency, and this execution, of course, could not be had till after the sale, and the deficiency appeared; and in other respects, as an examination will show, the California statute stops short of ours. Nor is the reasoning of the Courts of that State, under their own statute, satisfactory.

The foreclosure act of this Territory is taken from the code of Indiana, and decisions from that State would be entitled to weight, and especially so, if made on this act previous to its

adoption by us, as one State, in taking a law from another State, is generally presumed to have taken it with the construction placed upon it by the Courts of that State. No decisions, however, from that tribunal on the points at issue here, have been brought to the attention of the Court.

It remains only to consider whether such a judgment was rendered at the March term, 1859, in favor of Miller *v.* Hurd, as to create a lien on any property not embraced in the mortgage. A reference to that judgment, as quoted before, will show that it was simply a decree for the sale of the mortgaged premises, and at its rendition was a lien on no property outside the mortgage. At Sept. term, 1860, the Court permitted W. W. Miller and Gilmore Hays to amend their respective judgments, obtained at previous terms of the Court, and that the same be entered *nunc pro tunc.* On the 2d September, 1859, Gilmore Hays obtained a mortgage from Hurd and wife upon certain lands, which was duly recorded. Now, could the Court have the judgment against Miller so altered and amended as to create a lien against land in Hays' mortgage, if the judgment in favor of Miller, previous to the mortgage to Hays, created no such lien? We think not. It was not the correction of a mere clerical error, but in the view taken by this Court, the judgment as amended was a different and enlarged judgment. Whatever power the Court possessed to make this amendment as between Miller and Hurd, it possessed no power to make such amendment as will affect the rights of innocent parties.

When Hays took Hurd's note and mortgage, as a prudent man he might be supposed to examine the mortgage record and the transcripts of judgments filed with the auditor of the county. Upon examination, he found the transcript of a judgment against Hurd, which was simply a decree for the sale of certain mortgaged premises. Leave of Court is granted to enter *nunc pro tunc* judgments to answer the purposes of justice, but never to do injustice. Bouvier's Dict., vol. 2, p. 250; 3 Cal. Rep., p. 255; Cal. p. 21: See also 17 Pick, p. 106, where the doctrine is held that amendments of this character are held only in furtherance of justice, the forms of the Court, as Lord Ken-

yon remarks, being best used when made subservient to justice. See also 9 Pick, p. 167, which is the case in point, and where this question is fully considered by the Court.

The judgment of the Court below, rendered at the March term, 1861, confirming the sale to W. W. Miller, is hereby affirmed, and the judgment of the Court below in refusing to confirm the sale made to Gilmore Hays, is hereby reversed, and no objection having been made to said sale in the Court below, except in the matter of priority of lien, and none appearing to this Court, it is hereby considered by the Court, that said sale to Gilmore Hays be confirmed; and as the judgment of the Court below is affirmed in part and reversed in part, it is further adjudged that the costs in this Court be taxed one-half against W. W. Miller, and the other against Gilmore Hays. A mandate will issue from this Court to the Court below, directing the Judge thereof to confirm the sales in compliance with this judgment, and to direct the sheriff to make deeds to proper parties.

### SEPARATE OPINION BY CHIEF JUSTICE HEWITT.

In this case, although I concur with the majority of the Court in the decision it has rendered, I dissent from the construction given our statute in relation to the lien of judgments on the foreclosure of mortgages, and will briefly give my views of that law.

It appears from the record, that on the 20th day of October, 1857, Moses Hurd and wife, to secure the payment of a certain promissory note for the sum of one thousand dollars and interest, executed a mortgage to W. W. Miller, as collateral security, on a certain tract of land, being a part of the donation claim he was then living on. At the March term of the District Court, 1859, Miller brought suit to foreclose the equity of redemption in the mortgaged premises, and at the same term a judgment was rendered against the mortgagors, in favor of Miller, for the debt thus found to be due, amounting to $1,386.37; the equity of redemption was decreed foreclosed in the mortgaged premises and an order of sale made.

Although in fact no order of sale was made at that term on other property of the mortgagors, in the event of a balance being found due after the sale of the mortgaged premises if there should be any, still for the purposes of the present discussion and of giving my views of the statute, we will admit that such was the fact. How long it was after the decree in favor of Miller before the sale took place, it is not necessary to inquire; it is sufficient for our purpose, that after the decree and before sale, Hurd and wife executed to Hays a mortgage on lands not described in Miller's mortgage.

In view of this state of facts and under our statutes of foreclosure, did Miller's mortgage judgment and decree of sale, together with an order to levy the balance when ascertained on other property of the mortgagors, (provided such an order had been made,) operate as a lien on any other than the mortgaged premises, until after the sale of those premises and the deficit, if any, ascertained?

Section 402 of the Civil Practice Act, Statutes of 1859 and 60, page 86, provides the manner of rendering judgment in actions for foreclosure, and is as follows: "In rendering judgment of foreclosure, the Court shall order the mortgaged premises, or so much thereof as may be necessary, to be sold to satisfy the mortgage and costs of the action." Section 403 of the same act provides as follows: "When there is an express agreement for the payment of the sum of money secured contained in the mortgage, or any separate instrument, the Court shall direct, in the order of sale, that the balance due on the mortgage and costs, which may remain unsatisfied after the sale of the mortgaged premises, shall be levied of any property of the mortgage debtor." Sec. 404 of the same act, after providing for the sale of so much of the mortgaged premises as may be necessary to satisfy the judgment, interest and costs, as upon execution, goes on to say, "if any part of the judgment, interest and costs remain unsatisfied, the sheriff shall forthwith proceed to levy the residue of the other property of the defendant."

Now a judgment to become a lien must be personal, or such

an one as will support an execution. I think it will hardly be contended that the District Court has power under the provisions of the statute above recited, in connection with the 405th section, to render such a judgment in the first instance, supposing the order, or as it is called "a judgment over," on other property of the mortgage debtor to be made, because such order, though in the nature and performing the office of an execution, is, under our statute, held in abeyance, and is contingent upon the deficit, if any, which can only be ascertained after the mortgaged premises have been exhausted; and hence "the judgment over" cannot take effect or have any vitality until the deficiency is ascertained by a sale of the mortgaged premises.— And I am at a loss to conceive how an order of sale on other property than that described in the mortgage, though made at the time of foreclosure, can any more become a lien on such property than it would if the law made it the duty of the sheriff, after a sale of the premises, to make return to the clerk, there find the deficiency, and then take an order of sale or an execution for the balance. Both rest upon the same contingency, and the only difference perceivable is, that the first is the shorter and less expensive method of arriving at the same result. And it is clear to my mind that such was the view taken of the subject by the Legislature in the passage of the act. It is no answer to say that the judgment contained a statement of the amount due; that would be necessary if a mortgage should be foreclosed without any other instrument of writing accompanying it, and the statement of the amount found to be due does not make it a personal judgment for that amount, and cannot, because, as before stated, the Court has no authority under our statute to render such a judgment in an action to foreclose a mortgage. The "order over" amounts to nothing more than a direction for the sheriff to proceed under the order in the event of the insufficiency of the mortgaged property to pay the debt, interest and costs. The whole matter, therefore, was contingent, indefinite and uncertain, and so long as this continued to be the case no effect whatever could be given to it as a lien, and hence the mortgage of Hays', dating as it did prior to the sale under Miller's mortgage would be valid. There is no doubt

but that Miller might have procured a personal judgment on the amount found due, if he had proceeded on the note alone. But as he elected the other course, he has concluded himself from any benefit he might have derived had he adopted the former proceeding.

My opinion therefore is, that judgments of foreclosure, under our statute, are a unit and cannot be divided, except by ascertaining the deficiency after a sale of the mortgaged premises; then, and not till then, does the judgment or "order over" take effect, and as a consequence does not become a lien until then, and then only for such deficiency.