[No. 19488. *En Banc.* October 29, 1926.]

*In the Matter of the Estate of* ANNA L. TYLER, *Deceased.*
IDA SPANGLER *et al., Appellants,* v.
PERCY B. TYLER, *Respondent.*[1]

[1] EXECUTORS AND ADMINISTRATORS (59)—ALLOWANCE TO SURVIVORS
—PERSONS ENTITLED—UXORCIDE—STATUTES—CONSTRUCTION. Rem.
1923 Sup., § 1473, requiring the court, except in case of fraud,
to set aside to the surviving spouse property of the value of
three thousand dollars in lieu of a homestead, if none has been
claimed, should not be applied where the survivor murdered
his spouse for the purpose of obtaining her property, notwith-
standing the statute is unambiguous; in view of the fact that
the legislature could not have intended the act to operate in
such a case; and in view of Rem. Comp. Stat., § 143, providing
that the common law shall be the rule in this state, so far as
it is not inconsistent with our constitution, nor incompatible
with the institutions and condition of society in this state, and
in view of the maxims of the common law that no one shall
profit by his own wrong, or found any claim on his own
iniquity, or acquire property by his own crime.

[2] STATUTES (57)—CONSTRUCTION—INTENTION—SPIRIT OR LETTER OF
LAW. Statutes are to be construed with reference to the com-
mon law, and a thing within the letter of the law, but not
within its spirit, may be held inoperative where it would lead
to an absurd conclusion.

[3] CONSTITUTIONAL LAW (60)—VESTED RIGHTS—ESTATES AND IN-
TEREST IN PROPERTY. To deny an uxorcide homestead rights in
his victim's estate, as allowed to a surviving spouse by statute,
does not deprive him of property as a punishment for crime;
as he has no property right or vested interest therein.

[4] SAME (103)—DESCENT AND DISTRIBUTION (6-1)—EQUAL PROTEC-
TION OF LAWS — CONSTITUTIONAL GUARANTIES — CORRUPTION OF
BLOOD—FORFEITURE OF ESTATE. To deny an uxorcide homestead
rights in his victim's estate, as allowed to a surviving spouse
by statute, does not deprive him of the guaranty, under the
Bill of Rights of the Federal and state constitutions, that no
conviction shall work corruption of blood or forfeiture of estate.
PARKER, MITCHELL, ASKREN and MAIN, JJ., dissent.

[1]Reported in 250 Pac. 456.

Appeal from an order of the superior court for Snohomish county, Bell, J., entered April 30, 1925, granting to a surviving husband an allowance from the estate of his deceased wife. Reversed.

*C. T. Roscoe, Charles R. Denney,* and *John C. Richards,* for appellants.

*Charles A. Turner* and *Louis A. Merrick,* for respondent.

HOLCOMB, J.—From an order in probate proceedings setting over to respondent three thousand dollars worth of property out of the separate estate of his deceased wife, under the provisions of § 1473, Rem. Comp. Stat., as amended by § 2, ch. 142, of the Laws of 1923, p. 457, [Rem. 1923 Sup., § 1473] entered in the court below, this appeal is taken.

On November 10, 1924, respondent murdered his wife. On January 5, 1925, Ida S. Spangler was appointed administratrix of the estate of Anna L. Tyler, deceased. Prior to the filing of the petition by respondent to have the property set over to him in lieu of homestead, he had been tried, convicted, sentenced and committed to life imprisonment. An affirmative answer to the petition was filed by appellants alleging the above facts and that respondent killed his wife for the purpose of securing the property. A demurrer to the affirmative answer was sustained.

[1] The question to decide is whether an uxorcide, killing his wife for the purpose of getting possession of her separate property, is entitled to the benefit of the above cited statute. In that statute it is provided:

"If it shall be made to appear to the satisfaction of the court that no homestead has been claimed in the manner provided by law, either prior or subsequent to the death of the person whose estate is being administered, then the court, upon such notice as may be

determined by the court, upon being satisfied that the funeral expenses, expenses of last sickness and of administration have been paid or provided for, and upon petition for that purpose, shall award and set off to the surviving spouse, if any, property of the estate, either community or separate, not exceeding the value of three thousand dollars ($3,000). . . . The order or judgment of the court making the award or awards provided for in this section, shall be conclusive and final, except on appeal, and except for fraud. The awards in this section provided shall be in lieu of all homestead provisions of the law and all exemptions.''

By the express terms of this statute, the apparent duty of the court is to award and set off to the surviving spouse the amount of property therein mentioned in lieu of homestead provisions of the law and all exemptions. The only exception provided for in the statute is that of fraud. But the apparent duty, above stated, must be construed in connection with other statutory provisions and principles in such a case as this. His Honor, the trial judge, rendered a very able judicial opinion upon this question, which, indeed, constitutes a brochure upon the subject. Nor is he to be criticized for accepting the one statute at its face value and feeling fettered thereby, for it is a fact that the majority of about fourteen jurisdictions, which have considered this and analogous questions, sustain him.

It is so offensive to good conscience, repugnant to justice and revolting to the mind of every right thinking person, that one should come into court with bloody hands and receive, as it were, a reward for his iniquity, that we cannot conceive that the legislature, composed of persons of good sense and integrity, should ever have intended, in enacting the statute and its amendment, that such consummation could be accomplished. It must be true that such a state of facts as appear in

this case was not in the mind of the legislature at the time the statutes were passed.

It is argued on behalf of respondent, in effect,—with which the trial court agreed,—that the courts must give effect to the language of the statute as written, it being plain and unambiguous; that to construe this statute so that it would provide that one, as in the present case, should not benefit by his own crime would be to judicially interpret into the statute a provision not there found. It is also declared that it cannot be said that the legislature did not have in mind the making of exceptions, because it provided against fraud.

We are compelled to admit that a majority of the courts which have passed upon similar questions have held that the court has no power to write into an unambiguous law an exception which would prevent one from benefiting by his criminal act, when the legislature has not so provided. Some of the cases which have been examined have dealt with statutes upon insurance policies, where the beneficiary by homicide killed the insured so as to more speedily come into the money. Others have been upon statutes of inheritance or descent, where one has killed a person whose property had been willed to or would descend to him, in order more speedily to come into the estate.

In an early case in Nebraska, *Shellenberger v. Ransom,* 31 Neb. 61, 41 N. W. 700, 28 Am. St. 500, 10 L. R. A. 810, the supreme court first held that the husband who had murdered his wife for the purpose of acquiring her property was not entitled to inherit under the statute of that state, which did not make any such exception. Upon rehearing in that case, reported in 41 Neb. 631, 59 N. W. 935, 25 L. R. A. 564, in an opinion written by a commissioner, the former decision was overruled, and the opposite view taken.

In *McAllister v. Fair,* 72 Kan. 533, 84 Pac. 112, 115 Am. St. 233, 3 L. R. A. (N. S.) 1069, a very prominent case, it was held that a husband who had feloniously killed his intestate wife for the purpose of acquiring her property was not prevented, under the statute of that state which made no such exception, from taking such inheritance.

In *Owens v. Owens,* 100 N. C. 240, 6 S. E. 794, a widow who was convicted as an accessory before the fact of her husband's murder, was held to be entitled to dower in his lands under the statute of that state, which contained no exception.

In *Holloway v. McCormick,* 41 Okl. 1, 136 Pac. 1111, 50 L. R. A. (N. S.) 536, it was held that a husband who had murdered his wife had a right to inherit from her under the statute of that state, because no exception was made thereto by reason of the criminal act.

In *In re Carpenter's Estate,* 170 Pa. St. 203, 32 Atl. 637, 50 Am. St. 765, 29 L. R. A. 145, the Pennsylvania supreme court held that a son who murdered his father in order that he might more speedily obtain his inheritance out of his father's estate was allowed to inherit, notwithstanding his felonious act.

See, also, *Deem v. Milliken,* 3 Ohio C. D. 491, affirmed by memorandum opinion of the supreme court, 53 Ohio St. 668, 44 N. E. 1134.

Most of these cases cite other cases that are thought to sustain the decision therein in principle or by analogy, but we do not care to set out either the reasoning of the courts in the above cases, or the authorities. It seems to us that there was in all of those cases a too literal, submissive, and complacent acceptance of the bare language of the one statute, rather than fundamental principles of the common law and other written law.

In this state there is also a general statute, Rem. Comp. Stat., § 143 [P. C. § 8252], which is pertinent. It provides:

"The common law, so far as it is not inconsistent with the constitution and laws of the United States, or of the state of Washington, nor incompatible with the institutions and condition of society in this state, shall be the rule of decision in all the courts of this state."  .

We have held that any law in derogation of the common law should be strictly construed. *Hays v. Miller*, 1 Wash. Terr. 143; *State ex rel. Hopman v. Superior Court*, 88 Wash. 612, 153 Pac. 315; *Dernac v. Pacific Coast Coal Co.*, 110 Wash.. 138, 188 Pac. 15.

Section 1473, Rem. Comp. Stat., *supra,* on which respondent relies, is manifestly in derogation of the common law, for at common law the estate of the deceased would have passed to her heirs upon her death, and not have been awarded to respondent in lieu of homestead.

While it is true that this statute nowhere specifically provides that the rule or doctrine of the common law should apply, which precludes a murderer from inheriting from his victim, it is inconceivable that the legislature would intentionally enact a law whereby the murderer should so take.

The New York court of appeals decided in *Riggs v. Palmer,* 115 N. Y. 506, 22 N. E. 188, 12 Am. St. 778, 5 L. R. A. 340, that a murderer cannot take there as legatee or heir, the estate of one whom he has murdered for the purpose of obtaining the property. It was well observed:

"Besides, all laws as well as all contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own

crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes. . . . These maxims without any statute giving them force or operation, frequently control the effect and nullify the language of wills. . . . Here there was no certainty that this murderer would survive the testator, or that the testator would not change his will, and there was no certainty that he would get this property if nature was allowed to take its course. He therefore murdered the testator expressly to vest himself with an estate. Under such circumstances, what law, human or divine, will allow him to take the estate and enjoy the fruits of his crime?"

And so, in the case at bar, under the allegations of the petition, the murderer killed his wife so that he could possess himself of her property. The legislature, thinking, of course, of the most common acts and conduct of mankind, provided only the exception for fraud, but is it to be supposed that when providing against fraud as an exception in which the award should not be granted, it had in mind that the much blacker act and crime, homicide, should not bar one from taking the property as a homestead, while a mere fraud should? Such a supposition is unthinkable.

An English case, *Cleaver v. Mutual Reserve Fund Life Association,* 1 Q. B. (1892), 147, a case interesting also because it grew out of the famous Florence Maybrick case, held that the trust created by the insurance policy in favor of the wife under the English Married Woman's Property Act, was incapable of being performed by reason of Mrs. Maybrick's crime, and that the insurance money became a part of the estate of the insured.

In giving judgment Lord Esher, M. R., said:

"Applying the rule of public policy to this construction of the section, the wife here has, by her crime,

rendered the trust in her favor incapable of performance. It must therefore be treated as if it did not exist.''

Fry, L. J., in giving judgment, said that,

''It appears to me that no system of jurisprudence can with reason include amongst the rights which it enforces, rights directly resulting to the person asserting them from the crime of that person. If no action can arise from fraud, it seems impossible to suppose that it can arise from felony or misdemeanor. . . . This principle of public policy, like all such principles, must be applied to all cases to which it can be applied without reference to the particular character of the right asserted or the form of its assertion.''

A similar question arose from a devise by will by a testator who was killed by his beneficiary, *McKinnon v. Lundy*, reported in 24 Ont. Rep. 132. It was there held that, by his felonious act in killing his wife, although the killing was manslaughter and not murder, the husband had absolutely precluded himself from obtaining any benefit under her will or out of her estate. This decision was affirmed in that respect by the supreme court of Canada, in 24 Can. Sup. Ct. Rep. 650.

In Tennessee, upon a suit upon a policy of insurance by the beneficiary who had killed his insured wife, it was held that the rule of common law by which the surviving husband becomes the owner of his predeceased wife's choses in action does not apply where he makes himself the survivor by feloniously taking her life. It was also held that where the husband feloniously kills his wife he acquires no estate in her choses in action, and therefore has nothing to forfeit in it, and the question of forfeiture provided against in the statutes and constitutions that no conviction shall work corruption of blood or forfeiture of estate, does not arise. *Box v. Lanier*, 112 Tenn. 393, 79 S. W. 1042, 64 L. R. A. 458.

A case which appeals to us for its reasoning and determination is that of *Perry v. Strawbridge,* 209 Mo. 621, 108 S. W. 641, 123 Am. St. 510, 16 L. R. A. (N. S.) 244. In that case, a statute was involved giving the widower of a childless wife by curtesy one-half of the estate of which she died seized. It was held that the statute was not intended to, and did not, operate in favor of one who murdered his wife, where the legislature had also expressly adopted the common law rule with its maxims that no one shall profit by his own wrong; also the common law maxim that one shall not found any claim upon his own iniquity. The. word "widower" in such statute was defined by the court in that case to mean one who is reduced to that condition by the ordinary and usual vicissitudes of life, and not one who, by a felonious act, has himself created that condition.

Many of the cases cited in the first part of this opinion and other cases cited in those cases are referred to and analyzed in the last cited case, and their reasoning and conclusions rejected.

The case of *Box v. Lanier, supra,* was quoted and approved by the Missouri court, as follows:

"It has been well said that there are certain general and fundamental maxims of the common law which control laws as well as contracts. Among these are: 'No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries.' These maxims embodied in the common law, and constituting an essential part of its warp and woof, are found announced in both text-books and in reported cases. Without their recognition and enforcement by the courts, their judgments would excite the indignation of all right-thinking people. The first of these maxims

is applied in order to prevent one from taking the benefit of his own fraud. Why should not the last be enforced so as to forbid a party receiving the fruits of his own crime?''

The maxims of the common law are made a part of our laws by express statute of this state adopting the common law. The common law in this respect has not been repealed, modified or annulled by the statute relied upon by respondent authorizing an award out of the community or separate property of the decedent to the surviving spouse in lieu of homestead.

It is also stated in Wharton on Homicide (3d ed.), § 665, that:

''To permit a person who commits a murder, or any person claiming under him, to benefit by his criminal act, would be contrary to public policy. And no devisee can take under the will of a testator whose death has been caused by the criminal and felonious act of the devisee himself. And in applying this rule, no distinction can be made between a death caused by murder and one caused by manslaughter. Nor does the common law right of succession by descent operate in favor of one who wilfully takes the life of his ancestor for the purpose of succeeding to his property rights. And the common law right of a man to succeed to the property of his wife upon her death does not operate in favor of one who murders his wife. And the rule that the common law doctrine of succession of property does not operate in favor of one who wilfully takes the life of his ancestor should apply against any person claiming through or under his slayer. Nor does the rule of law that a common law right of succession to property does not operate in favor of one who wilfully takes the life of his ancestor contravene a constitutional provision that a conviction of crime shall not work a forfeiture of the estate.''

If the foregoing principles apply to estates that would be taken absolutely as by curtesy, or by inherit-

ance, or by devise, most assuredly they would apply to a grant made by statute in favor of the surviving spouse purely for the beneficent purpose of providing against penury and improvidence.

[2]  Said the Missouri court:

"Shall we say that whilst the case may fall within the letter of the law, yet it does not fall within the spirit or reason, or within the reasonable legislative intent?"

"No statute enters a field which was before entirely unoccupied. It either affirms, modifies, or repeals some portion of the previously existing law. In order, therefore, to form a correct estimate of its scope and effect it is necessary to have a thorough understanding of the laws, both common and statutory, which heretofore were applicable to the same subject. Whether the statute affirms the rule of the common law on the same point, or whether it supplements it, supersedes it, or annuls it, the legislative enactment must be construed with reference to the common law; for in this way alone is it possible to reach a just appreciation of its purpose and effect. Again, the common law must be allowed to stand unaltered as far as is consistent with the reasonable interpretation of the new law." Black, Construction and Interpretation of Laws (1st ed.), p. 233.

"It is a well-settled rule of construction, that the letter of a statute will not be followed when it leads to an absurd conclusion; but on the contrary, the reason for the enactment must enter into its interpretation so as to determine what was intended to be accomplished by it." Sams v. Sams, 85 Ky. 396.

"Statutes are likewise to be construed in reference to the common law; for it must not be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required." 1 Kent Commentaries, 464.

The supreme court of the United States has also said:

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has often been asserted, and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act." *Church of the Holy Trinity v. United States,* 143 U. S. 457.

And in *New York Mutual Life Insurance Co. v. Armstrong,* 117 U. S. 591, that court held that proof that the assignee of a policy of life insurance caused the death of the insured by felonious means is sufficient to defeat a recovery on the policy. In the opinion in that case by Mr. Justice Field, he said, (although it may be *obiter,* this reasoning we strongly approve):

"But independently of any proof of the motives of Hunter in obtaining the policy, and even assuming that they were just and proper, he forfeited all rights under it when, to secure its immediate payment, he murdered the assured. It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of the party whose life he had feloniously taken. As well might he recover insurance upon a building that he had wilfully fired."

Respondent contends, however, that all such cases being upon rights of succession, inheritance, or bequest or devise, or suits upon insurance policies which were matters of contract, none of them apply to a case like this. They are probably not directly applicable to a statute like ours, but the rules of construction applied are just as applicable to this, in our opinion, as the

other statutes referred to, or to recovery on insurance policies.

[3] Respondent also contends that to deprive him of this property is to deprive him of a property right conferred upon him by statute, as punishment for the commission of the crime. That is not correct. His punishment for the commission of his heinous crime has already been assessed. This property was not his, and he is not being deprived of it. He has sought to acquire it because of the crime he committed for the purpose of acquiring it. He had no vested right or interest in it. It is, therefore, not adding to his punishment, nor taking property from him which belonged to him.

[4] Respondent also claims that to deprive him of this property would be to deprive him of the guaranty under the Bill of Rights of the federal and state constitutions, to the effect that no conviction shall work corruption of blood or forfeiture of estate. This contention also is answered in the cases of *Box v. Lanier; Perry v. Strawbridge, supra;* in the first of which the Tennessee court said that where a husband feloniously killed his wife he acquired no estate in her choses in action, and therefore had nothing to forfeit in it. The question of forfeiture provided against in the constitutional provision does not arise. In the Missouri case, *supra,* the decision of the Tennessee court was approved. See, also, the text from Wharton, *supra.*

To allow respondent to reap the reward of his intentional homicide by granting him the separate property of his murdered wife is so utterly opposed to justice and good conscience, morals, and the maxims of the common law which are a part of the law of the land in force in this state, that we are utterly unable to assent thereto.

The judgment is reversed, with instructions to overrule the demurrer to appellant's answer to respondent's petition, receive evidence in support of the answer, and proceed further in accordance herewith.

TOLMAN, C. J., FULLERTON, BRIDGES, and MACKINTOSH, JJ., concur.

PARKER, J. (dissenting)—I dissent. The statute in question is plain. It contains no exceptions. The only loss of rights visited by law upon respondent for his crime is that prescribed by our homicide criminal statute; that is, loss of life or liberty as may have been adjudged against him in his prosecution for the commission of his crime. I think the majority opinion is, in its effect, unwarranted judicial legislation; as to my mind is well demonstrated by a number of the decisions cited therein and others of the same tenor which might have been cited. If respondent is to lose, as the result of the commission of his crime, some right other than his life or liberty, it is for the legislature, and not the courts, to so prescribe.

MITCHELL, J., concurs with PARKER, J.

ASKREN, J. (dissenting)—The majority opinion is a splendid exposition of what exceptions should have been placed in the statute. But the failure to place them there affords us no ground for supplying the deficiency. It may be, as the opinion says, offensive to good conscience to allow a guilty person to obtain the benefits of the statute; but I confess that the shock to my conscience is greater at the attempt of the court to legislate an exception into the statute.

As long as the constitution provides that the legislature alone shall enact laws for the people of the state, I shall deny that the court possesses that right.

MAIN, J., concurs with ASKREN, J.