[No. 34239.   *En Banc.*   December 18, 1958.]

CHARLES J. EISENBACHER *et al., Respondents,* v. THE CITY
OF·TACOMA *et al., Appellants.*[1]

[1]Reported in 333 P. (2d) 642.

*Marshall McCormick* and *Robert R. Hamilton,* for appellants.

*Horace G. Geer,* for respondents.

*Robert D. Dellwo, amicus curiae.*

FINLEY, J.—This is an action against the city of Tacoma and the Firemen's Pension Board of that city to compel the payment of certain pension benefits allegedly due plaintiffs under the Firemen's Relief and Pension Act in force prior to 1935, and for judgment for pension benefits allegedly accrued thereunder. Plaintiffs in this action are retired Tacoma firemen or the surviving widows of Tacoma firemen. Defendants' demurrers to the complaints were overruled. When defendants elected to stand on their demurrers, the trial court entered judgment for the plaintiffs. The defendants have appealed.

The legislature first passed a firemen's relief and pension act in 1909; Laws of 1909, chapter 50, p. 88. The original act was amended by Laws of 1919, chapter 196, p. 668; Laws of 1929, chapter 86, p. 144; and Laws of 1935, chapter 39, p. 100. In 1947, the legislature completely revised the law (Laws of 1947, chapter 91, p. 581), but we are not concerned with this enactment, since, by its own terms, it does not apply to firemen who were employed prior to 1947. All of the respondents commenced drawing pensions prior to the enactment of the 1955 amendment to the 1947 act; therefore, that amendment does not concern us in the instant case.

The pensions provided for under the *1909* and *1919* acts were to equal one half of the salary attached to the rank held by the fireman for one year prior to the commencement of the pension. Under the *1929* act, the pensions were to equal one half of the salary received by the fireman prior to the commencement of the pension. Under the *1935* act, the pensions were to be computed on the basis of one half of the salary attached to the rank held by the fireman prior to the commencement of the pension, but no pension could

exceed a maximum limitation of one hundred twenty-five dollars per month. Respondents or respondents' husbands, as the case may be, all commenced work as firemen for the city of Tacoma prior to the 1935 act. Each respondent meets the pension qualifications established by the 1935 act. Since they also meet the qualifications of the earlier enactments, their pension rights are determined by the latest act which can constitutionally be applied to them. All of the various respondents commenced drawing pensions between 1948 and 1954, and all are presently drawing pensions. In each instance, the pension was authorized by the firemen's relief and pension board in the sum of one hundred twenty-five dollars per month. Thus, the board applied the above-noted maximum pension limitation provisions of the 1935 act. The pensions payable to respondents would be in higher amounts, if computed under the statutes as they existed prior to the 1935 amendment.

The present appeal as to all respondents other than Mr. Eisenbacher raises the question of whether the 1935 amendment to the firemen's relief and pension act, *as applied* by the board to the respondents, violates constitutional prohibitions against the impairment of contracts. The appeal relative to respondent Eisenbacher requires a determination of the meaning of the word *rank* as that word has been used in the firemen's relief and pension act.

In *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536, this court stated:

". . . the employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions. . . ."

We held in *Bakenhus* that contractual pension rights of the claimant (a policeman who had retired after having been employed for the requisite statutory period of service) could not, constitutionally, be modified in such a manner as to greatly reduce the value of those pension rights. We decided that the 1937 amendment to the *police* relief and pension act *could not, constitutionally, be applied to Mr. Bakenhus as a limitation on his pension rights.*

Apparently, in an effort to follow the *Bakenhus* case, appellants have conceded that respondent Eisenbacher, who retired on the basis of length of service, is entitled to more than the one hundred twenty-five dollars per month maximum pension provided by the *1935* amendment to the firemen's relief and pension act. (There is still a dispute as to the exact amount of Eisenbacher's pension, and this aspect of the appeal will be discussed *infra* when we deal with the meaning of the word *rank.*)

Appellants vigorously contend, however, that the principle announced in the *Bakenhus* case must be restricted to factual situations *which specifically involve retirement for service.* They urge that the decision simply stands for the proposition that the legislature cannot make unreasonable modifications of the *retirement for service* pension benefits which were in force when an employee commenced work. Thus, it is their position that the *Bakenhus* principle is not applicable to contractual rights for pensions based upon the disability or death of a fireman while in line of duty.

With this we do not agree. Through the various firemen's relief and pension acts, the legislature has established a comprehensive relief and pension system for firemen. Among other things, these acts grant: (a) a service pension, if the fireman works the requisite number of years and fulfills the other statutory requirements; or (b) a disability pension, if he becomes disabled in the line of duty; or (c) a pension for his widow, if he dies as a result of injuries he received in the line of duty. The provisions for the three foregoing categories of pension relief are all couched in the same language. It would violate the manifest purpose of the legislature to do as appellants request; *i.e.,* to chop up a comprehensive pension relief system by applying different rules of statutory construction to identical language when used in different sections of the same statute.

██ The proper interpretation of the firemen's relief and pension act and of the decision in *Bakenhus, supra,* is as follows: An employee who accepts a job to which a pension and relief plan or system is applicable contracts for a pension and relief plan or system substantially in accord

with the then existing legislation governing the same; modifications of a pension plan or system cannot be imposed on the employee unless the changes are equitable to the employee. Permissible modification could, in some cases, completely destroy inchoate benefits of third parties. *Packer v. Board of Retirement* (1950), 35 Cal. (2d) 212, 217 P. (2d) 660. The contractual rights of the *employee* to a "substantially similar" pension and relief system belong only to the employee until all contingencies have been fulfilled.

The specific question, therefore, to be decided is whether the 1935 amendment to the firemen's relief and pension act results in permissible (*i.e.*, reasonable and equitable) changes in the act as it existed prior to the amendment *as applied* to respondents or respondents' husbands, as the case may be.

In our opinion, the 1935 amendment provides no corresponding benefit to the employee *to counterbalance the loss of pension rights* resulting from the imposition of the one hundred twenty-five dollars maximum pension limitation. The amendment, considered as a whole, is clearly detrimental *as applied* to respondents, or respondents' husbands. We find nothing in the record before us, nor in the legislative records, which indicates that the one hundred twenty-five dollars maximum pension limitation was dictated by some overriding public policy.

As to the foregoing aspects of this appeal, which relate specifically to respondents other than Eisenbacher, the judgment of the trial court should be affirmed.

We shall now turn to the portion of the appeal which concerns respondent Eisenbacher. He began working for the Tacoma fire department in 1923. In 1944, when he was appointed to the position of *fire chief,* he had achieved the permanent civil service rank of captain under the city's classified civil service system. The position of *fire chief* is not included in civil service classification of the city of Tacoma. It is an appointive position, and the person holding it is subject to summary removal. Eisenbacher held that

position until he retired in 1952. At the time of his retirement his salary was six hundred dollars per month.

Subsequent to the decision in the *Bakenhus* case, *supra,* Eisenbacher's monthly pension payments were raised from one hundred twenty-five dollars per month to one half of the salary attached to the rank of *captain,* as of the date on which he retired.

In the trial court, Eisenbacher's contention that his pension should be based on the higher salary attached to the position or rank of *fire chief* was upheld. The appellant city of Tacoma contends that the word *rank*, as used in the firemen's relief and pension statutes, refers to the classified civil service system; that since the position of *fire chief* is unclassified, Eisenbacher is entitled only to a pension based on the lower pay rate of his permanent civil service rank of *captain.*

Appellants' contentions are not well founded. We believe the judgment of the trial court must be affirmed for the following reasons:

■ (1) The original firemen's relief and pension act (*supra*) was enacted, and benefits thereunder were provided several years before the city of Tacoma adopted its civil service system in 1927; and even a longer period ensued before the legislature provided expressly for civil service for firemen; Laws of 1935, chapter 31. Thus, when the word *rank* was originally included in the firemen's relief and pension act, it could not have been intended to refer to a particular or special civil service classification.

(2) Appellants admitted in oral argument that the *fire chief* was not required to be a member of the fire department prior to his appointment. Yet the *act* clearly provides that "any person" who "has served . . . *in any capacity or rank whatever*" (italics ours) shall be entitled to a pension. Laws of 1919, *supra*; this law was in force at the time respondent Eisenbacher became a fireman. (Neither the 1929 nor the 1935 amendment evidence a legislative intention to change the meaning of the word *rank*; therefore, the principle of permissible modification does not come into play as to Eisenbacher's claims in this appeal.) If we ac-

cepted appellants' contention, and if Eisenbacher had never held a position with a city other than *fire chief*, it follows that he would not have been entitled to any pension whatsoever. However, such a result is not in accord with the express language of the legislature.

We hold that the word *rank*, as used in the firemen's relief and pension act, and specifically, as it is used in the 1919 act, includes the position of *"fire chief."*

The judgment of the trial court as to Eisenbacher and the other respondents herein is hereby affirmed.

MALLERY, DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

OTT, J. (concurring in the result)—We did not say in the *Bakenhus* case that a policeman's contractual pension rights could be modified by subsequent legislation, provided it did not *"greatly reduce* the value of those pension rights." (Italics mine.)

We did say that the legislature could modify a pension act, provided that the modification did not impair the existing pension contract or vested pension rights. Whether the modification is an impairment (weighing the detriments against the corresponding benefits) depends upon the individual's status, and *must be determined by the individual alone.* What might be reasonable or equitable as applied to others may be unreasonable and inequitable as applied to him.

When modifications are made, the person who has vested pension rights *may elect to accept the modification.* Such election, however, cannot be *forced* upon him by the legislature, the pension board, or the court. A mutual modification of contractual pension rights can be effected only by the freedom of choice, basic in contract law.

I concur in the result solely because it sustains the election which the *respondents* made.

HILL, C. J. (dissenting)—I agree with the majority that the attempted distinction between a retirement pension and a pension for disability is without merit. I agree, too, that the word "rank," as used in the firemen's relief and pension

act, includes the position of "fire chief." I cannot agree that the limitation of pensions to one hundred twenty-five dollars per month as provided by the 1935 amendment to the firemen's relief and pension act was unconstitutional in so far as the respondents or respondents' husbands were concerned.

The gist of the majority opinion to which I take exception is found in the following two paragraphs:

"The specific question, therefore, to be decided is whether the 1935 amendment to the firemen's relief and pension act results in permissible (*i.e.*, reasonable and equitable) changes in the act as it existed prior to the amendment *as applied* to respondents or respondents' husbands, as the case may be.

"In our opinion, the 1935 amendment provides no corresponding benefit to the employee *to counterbalance the loss of pension rights* resulting from the imposition of the one hundred twenty-five dollars maximum pension limitation. The amendment, considered as a whole, is clearly detrimental *as applied* to respondents, or respondents' husbands. We find nothing in the record before us, nor in the legislative records, which indicates that the one hundred twenty-five dollars maximum pension limitation was dictated by some overriding public policy."

I could agree with the conclusion of the majority if the question of whether the changes in the 1935 act were reasonable and equitable were one to be determined by the process of balancing benefits and detriments between the 1929 act and the 1935 act on the high inflationary plateau of 1958; but, it seems to me, it ought to be determined by balancing benefits and detriments as they seemed to be to the legislature in 1935. We were then in the depths of a depression when one hundred twenty-five dollars a month represented a comfortable income, many pension funds were, or about to become, insolvent, and the legislative problem was to shore up precarious situations.

It will be said that there is none of this in the record, and I readily agree; but neither is there anything in the record which justified the court in believing that it knows better

in 1958 how to balance the benefits and detriments in the 1929 and 1935 pension acts than did the 1935 legislature.

I am also convinced that the respondents (or their husbands) had acquiesced in the modifications which the 1935 act made in their pension contracts for the reasons expressed in my dissent in *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695 (beginning at page 703), 296 P. (2d) 536.

I, therefore, dissent and would determine all the pensions involved on the basis of the limitation contained in the 1935 act.