[No. 42199.　En Banc.　November 15, 1972.]

SAMUEL GAIL LEONARD, *Respondent*, v. THE CITY OF SEATTLE *et al., Appellants.*

*A. L. Newbould* and *Arthur T. Lane,* for appellants.

*Kempton, Savage & Gossard,* by *Anthony Savage,* for respondent.

HALE, J.—Defendant is a retired Seattle police officer who challenges the loss of his pension, canceled because of his felony conviction. He joined the Seattle Police Department December 15, 1941, and, except for military service, served for 25 years until his retirement on March 1, 1967. During his tenure as a police officer, he made mandatory contributions to the retirement system totaling $4,820.25; he retired at a monthly pension of $493.50.

Following plaintiff's conviction in federal court January 8, 1971—some 4 years after his retirement—of violating Int. Rev. Code of 1954, § 5861 (Supp. 1972), the felony of unlawful possession of an unregistered machine gun, the trustees of the police pension fund applied RCW 41.20.110, and discontinued payment of his pension on or about April 7, 1971. From a declaratory decree ordering reinstatement of the plaintiff's pension and reimbursement of all unpaid back payments with interest at 8 percent, the city appeals.

The first question is whether the appeal should be dismissed for lack of jurisdiction in the trial court because the Attorney General had not been served with the summons and complaint pursuant to RCW 7.24.110, which reads:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which

would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.

Plaintiff brought this suit under the declaratory judgment provision of RCW 7.24, asking that the pension forfeiture provision, RCW 41.20.110, be declared unconstitutional. He did not serve the summons and complaint upon the Attorney General of the state, nor did the defendant city demand that such service be made. The city did not call the trial court's attention to the lack of such service, nor move against the suit in any way in the trial court for the want of such service. The record is totally silent as to the subject of service upon the Attorney General; and the trial court determined the cause solely upon the issues. The issue of service of the summons and complaint upon the Attorney General was raised for the first time in the hearing of this appeal when the defendant city moved to dismiss the case or for a remand.

█ Although in a general sense it is correct to say that the provisions of the statute, RCW 7.24.110, are jurisdictional and mandatory, *Parr v. Seattle,* 197 Wash. 53, 84 P.2d 375 (1938), we are not confronted here with a situation in which on the face of the pleadings the court is without jurisdiction over either the parties or subject matter. All that the statute says with respect to service is that "the Attorney General shall also be served with a copy of the proceedings and be entitled to be heard." The so-called lack of jurisdiction claimed because of failure to perform what in this case would amount to no more than a formal act, is the omission of an act which if performed would here have no substantive effect upon the decision. It is a failure to take a procedural step, but not a failure of such vital nature that it cannot be waived by the Attorney General.

The statutory provision that the Attorney General be served before proceeding with the trial did not impose upon the court a duty to examine sua sponte all jurisdictional aspects before entertaining the suit. That the statute requiring service can be waived by the Attorney General so as to continue the court's jurisdiction is clearly implicit in our comment on the subject that "lack of jurisdiction to enter the declaratory judgment does not, however, affect the validity of the portion dismissing the complaint." *See Roehl v. PUD 1,* 43 Wn.2d 214, 245, 261 P.2d 92 (1953); *Manlove v. Johnson,* 198 Wash. 280, 88 P.2d 397 (1939).

Here, the Attorney General actually, in open court, waived the requirement of service. When the appeal was called for hearing before this court, the Attorney General, through his duly qualified and acting assistant, Mr. Keith Dysart, stated categorically that the Attorney General's office would not stand upon the statute, did not wish the cause to be remanded to the trial court for service of the summons and complaint upon the Attorney General and that he was satisfied that the statute in controversy had received and would receive a vigorous support by the defendant city's corporation counsel.

Following are some of the statements made by Mr. Dysart to this court and counsel when the appeal was called for oral argument. After observing that the Attorney General's office is served in declaratory relief actions in excess of 250 cases a year, Mr. Dysart said:

> We appear only in those actions where we think there is an overriding state interest and where we believe that the statute is not going to receive an adequate and vigorous constitutional defense, something that is certainly not the case where the corporation counsel and Mr. Lane are involved.

He added that if plaintiff had to start the action over again, the appeal would come back to the court next year; and said, too, that the Attorney General's office had been advised by plaintiff's counsel and knew of the pendency of this action and went on to say:

> We are here before you to tell you that if we had been served, we simply would have entered a notice of appearance and in effect tendered the defense to the corporation counsel's office, because we have respect for their ability to defend ordinances and statutes on constitutional grounds . . .

Then, after stating that the Attorney General's office sometimes finds out about actions of this sort in a rather informal way and advises counsel that they would like to be served, and referring to the instant case, Mr. Dysart said:

> But as to this particular case we join in Mr. Lane's [Assistant Corporation Counsel] position, the position that we would have advocated . . . We believe that the argument was adequately presented in his briefs and oral argument . . . This is the kind of situation where we don't think the priorities warrant our attention. He's there to defend the statute. We hate to have the case sent down and start all over again simply to tender the defense to Mr. Lane to bring it right back up to you again . . .

Our decisions on the subject of jurisdiction, that is, the power of a court to hear and decide a controversy, have never gone so far as to hold in a case of this kind, where all of the real parties in interest are before the court, that the superior court, at the outset, was without jurisdiction.

The record discloses this to be a suit for a declaratory judgment, and for affirmative relief brought by a proper party against a proper party defendant in a court having jurisdiction over both parties and subject matter, and constitutionally empowered to enter a determinative judgment and decree in the premises. All that is lacking for fulfilling jurisdiction is proof that notice of the pendency of the action had been given to the state Attorney General—a notice which that officer acknowledged in open court had been given him before argument of the appeal. This acknowledgment coupled as it was with a categorical declaration that had a summons and complaint been timely served, the action of the Attorney General in the case would not have differed from the position taken by that officer in open court, constituted, we think, an appearance. Statements

made in the course of an appearance by the Attorney General that he believed the position taken by defendant city had been and would be vigorously supported at trial, and on appeal and that had the Attorney General received a summons and complaint he would have tendered the defense of the statute back to the defendant city. These declarations coupled with the statements that the Attorney General would not and did not intend to litigate the issue further, constitute in our opinion a formal waiver of all objection to the jurisdiction and an affirmance by the Attorney General of the court's jurisdiction insofar as it would have been affected by the service of a summons and complaint.

On the next issue, the trial court held unconstitutional, as amounting to a forfeiture of estate for conviction of a crime, RCW 41.20.110 which provides for cessation of pension rights upon conviction of a felony. The crime of which plaintiff was convicted was punishable by imprisonment for not more than 10 years and a fine of not to exceed $10,000 (Int. Rev. Code of 1954, § 5871 (Supp. 1972)), and thus, as noted, amounted to a federal felony defined as any crime punishable by death or imprisonment for a term exceeding 1 year. 18 U.S.C. § 1 (1969).

Plaintiff's retirement pension was discontinued under the terms of RCW 41.20.110, which provides:

> Whenever any person who shall have received any benefit from said fund shall be convicted of any felony, or shall become an habitual drunkard, or shall fail to report himself for examination for duty as required herein, unless excused by the board, or shall disobey the requirements of said board then such board shall order and direct that such pension or allowance that may have been granted to such person shall immediately cease, and such person shall receive no further pension or allowance or benefit under this chapter, but in lieu thereof the said pension or allowance or benefit may, at the discretion of the board, be paid to those immediately dependent upon him, or to his legally appointed guardian.

In holding the above provision unconstitutional as ap-

plied to plaintiff's circumstances, the court gave full effect to Const. art. 1, § 15, which states:

No conviction shall work corruption of blood, nor forfeiture of estate.

*Cf.* U.S. Const. art. 3, § 3, clause 2:

The congress shall have power to declare the punishment of treason, but no attainder of treason shall work corruption of blood, or forfeiture except during the life of the person attainted.

Both parties rely considerably on their contrasting views of the rationale of *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956), probably our leading statement on the basic legal nature of public pensions. The city cites *Bakenhus* as declaring that the right to a pension, although vesting upon retirement is wholly contractual in nature, including all applicable statutes as component parts of the contract, and that plaintiff thus contracted that if convicted of a felony his pension should be discontinued. Accordingly, argues the city, the estate is no greater than the contractual rights which created it, and plaintiff's pension vested conditionally only, to be canceled upon occurrence of the very condition upon which he had agreed it should be discontinued. It is thus argued that the duty of the city to discontinue the pension is an integral part of contract, and plaintiff's felony conviction placed a contractual as well as a statutory obligation on the pension board to stop the pension payments. Accordingly, contends the city, even though the pensioner's rights to his pension commence to vest as he performs his work and contributes into the pension fund, these rights, accruing and vesting as they do from day to day and year to year until finally ripening to a right to payment at the time of retirement, constitute but a limited estate, delimited by contractual rights according to the terms of a contract set forth by statute, charter and ordinance during the years of employment.

We accept the city's contention to the extent that the retirement pension is contractual in nature; but that does not mean that once vested the right to the pension

does not constitute a part of the recipient's estate. That the retirement pension arises out of a contract of employment does not deprive it of the characteristics of property, but rather imparts to it that very characteristic by removing it from the status of a gratuity, mere expectancy, or simply a promise enforceable ultimately by no more than a judgment for damages.

As this court said in *Bakenhus,* at page 698:

> In this state, a pension granted to a public employee is not a gratuity but is deferred compensation for services rendered. The contractual nature of the obligation to pay a pension when the employee has fulfilled all of the prescribed conditions was recognized in *Luellen v. Aberdeen,* 20 Wn. (2d) 594, 148 P. (2d) 849 (1944) . . .

*Bakenhus* thus held that, although the rights to a retirement pension were contractual in nature and supported by consideration in the form of work performed and contributions made by an employee in the public service, they accrued and vested from day to day and year to year to ripen finally with the fulfillment of the conditions of the contract. The employee ultimately acquires a vested right to the present payment of the pension, which right imposes upon the state or its subordinate agencies a corresponding duty to create and maintain the fund to pay the pension according to the terms of the contract. Even before ripening finally, and during the years of its accrual, it was more than an expectancy and more than an enforceable promise or a contract; it gave him steadily accruing rights in and to the pension fund itself. As fully ripened, plaintiff's pension constituted property—the present right to payment of his deferred compensation. When his rights to the pension fully vested, he acquired enforceable rights to funds under the control of the trustees according to his contract, and these rights thus finally vested constituted property not to be divested or defeated by means or for other reasons or on different grounds than those upon which any other kind of property could be alienated or defeated.

The general rules delineating the nature of public pensions are seen in a series of cases passing directly upon the

subject. In *Bakenhus v. Seattle, supra,* it was established that a pension provided by law for public employees and officers to which contributions have been made or for which services have been performed by the employee or officer is not a gratuity but is deferred compensation for services rendered and contributions made. As the employee or officer contributes into the fund and performs services, his rights to a pension vest, and he cannot be deprived of such vested rights by intervening legislation which inequitably operates to the detriment of such accrued rights. *Eisenbacher v. Tacoma,* 53 Wn.2d 280, 333 P.2d 642 (1958). Stated another way, a public employee or officer who performs services and contributes to a public pension plan or system contracts in accordance with the legislation in effect governing the plan or system, and the public cannot constitutionally modify the plan or system to the detriment of the employee if such modifications are inequitable. *Letterman v. Tacoma,* 53 Wn.2d 294, 333 P.2d 650 (1958).

Because the rights to a public pension accrue with the performance of the public work or service, they are to be determined as of the latest enactments applicable to the recipient in effect prior to actual retirement. This, of course, is not to hold that in periods of extreme economic emergency the state may not make equitable and temporary alterations in the pension in order to insure its continuance and the survival of the pension system, but that problem is not now before us. The issue here does not arise from a general change in pension benefits made necessary by a deep and general economic crisis threatening the survival of the whole pension system, but rather from a statute which provides for a total defeat of one man's pension occurring long after it had finally vested. *Dailey v. Seattle,* 54 Wn.2d 733, 344 P.2d 718 (1959).

Pension rights, because of their nature as deferred compensation, vest under then applicable legislation upon the commencement of employment or service and continue to vest with each day of employment or service. *Bowen v. Statewide City Employees Retirement Sys.,* 72 Wn.2d

397, 433 P.2d 150 (1967); *Tembruell v. Seattle,* 64 Wn.2d 503, 392 P.2d 453 (1964); *DeRevere v. DeRevere,* 5 Wn. App. 741, 491 P.2d 249 (1971). Vesting as they do from day to day and year to year, they constitute property and as property amount to an estate. Plaintiff's property in the pension, therefore, seems to us to be much like his property interests in paid-up insurance, his bank accounts, his home and furniture, and his automobile. In short, his pension rights are an integral part of his estate.

The city relies, too, on the basic principle that a criminal acquires no property rights in the fruits of his crime, and would extend this principle to the plaintiff's situation because, it is said, he agreed he would surrender his pension if he were convicted of a felony. One cannot deprive the true owner of his property through criminal acts; we adhere to the idea that one who murders his spouse to inherit from her acquires nothing thereby. *In re Estate of Tyler,* 140 Wash. 679, 250 P. 456 (1926). It follows, therefore, as a general rule in such cases that, since no property is lawfully acquired by the crime, there is nothing to be forfeited on conviction for it. *See also In re Estate of Helwinkel,* 199 Cal. App. 2d 283, 18 Cal. Rptr. 473 (1962), holding that a woman convicted of murdering her husband could not compel a family allowance from his estate. This court follows the overwhelming weight of authority in this country that a slayer cannot inherit from his victim, or otherwise benefit from the victim's death through insurance, joint tenancy, or other interests in the victim's property.

But these principles are inapplicable to the case before us. The property in issue, *i.e.,* the vested right to a pension, was not the fruit of crime nor acquired in the pursuance of criminal activity as a policeman. Instead, the felony conviction occurred some 4 years after retirement; the criminal act of which plaintiff had been convicted contributed in no way to the enlargement or aggrandizement of his pension, nor was it proved to have been done in the course of his duty as a Seattle police officer during his 25 years of active duty. The crime had no connection with a police officer's

performance of his duties, nor his contribution into the pension fund either in money or services during his active tenure as a police officer.

Raising one other point, the city refers to RCW 41.20.100 which requires that all retired police officers shall report to the chief of police where so retired on the first Mondays of April, July, October and January of each year, and be available for emergency assignment as police officers to serve without compensation. Since a felony conviction presumably would bar a retired officer from such service, and render him legally incapable of performing that part of his contract, he has, it is urged, breached that part of the contract, and loses his pension because of such willful breach. This particular issue, we think, is not before us. The extent to which a retired policeman must remain available for emergency police duty and the measure of damages for a breach of such duty will have to await a decision when such a case arises.

Finally, we should not overlook the rationale of *Tembruell v. Seattle, supra.* There a police officer whose pension was discontinued for felony conviction had received a deferred sentence, and the case turned on the question of whether he had been convicted. Because the information was subsequently dismissed, the finding of guilty, we held, did not under the pension laws amount to a conviction; but in reaching that decision and as a part, we think, of the rationale of that case, this court touched upon the very point in issue now:

> Thus the statute (RCW 41.20.110) providing for discontinuance of the pension when the recipient has been *convicted* of any felony must be considered in connection with the rule that the right to the pension is a vested right in the nature of a property; and interpreted so as to avoid working a forfeiture of estate for conviction of a crime.

*Tembruell v. Seattle,* 64 Wn.2d 503, 506, 392 P.2d 453 (1964).

We must, therefore, conclude that plaintiff's rights to a pension vested completely on his retirement; that, al-

though these rights had developed in a continuing process of vesting through a continuing contract of employment in the public service and were contractual in nature, they completely vested upon his retirement; that, having fully vested upon retirement, they constituted valuable property of his estate; and that to take this property away from him as a consequence of his conviction of a felony after fully vesting would unconstitutionally work a forfeiture of estate prohibited by Const. art. 1, § 15, for conviction of a crime. To the extent, therefore, that RCW 41.20.110 purports to deprive a retired police officer of his pension for conviction of a felony occurring after his retirement, it is unconstitutional and without effect.

Affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, and HUNTER, JJ., concur.

FINLEY, J. (concurring specially)—I have signed the majority opinion affirming the trial court for the reasons stated therein and for additional reasons of my own, stated briefly as follows:

First, jurisdiction is one of those "weasel words" of the law, and its spectrum of meaning is broad and flexible or viable. Its legal application and significance is too often dependent upon the "eyes of the beholder" in relation to so-called operative facts and circumstances.

Second, I think some of our early decisions concerning declaratory judgment actions, in particular *Parr v. Seattle,* 197 Wash. 53, 84 P.2d 375 (1938), have spoken loosely or too precipitously about the requirement of service on the state Attorney General as a jurisdictional rather than a more simple, less drastic procedural requirement.

The statutory requirement of service on the Attorney General is undeniably a desirable and constructive one, certainly when a lawsuit puts in issue the constitutionality of a statute enacted by the legislature. This is for the simple reason that more parties than the litigants in a given lawsuit are likely to have some interest in a statute sub-

jected to constitutional attack. The Attorney General, as attorney for the people of Washington should be apprised of such action and enabled to participate when in his sound discretion a significant public interest is at stake and should be protected by the legal expertise and efforts of his office. But it does not follow that service upon the Attorney General must be categorized so drastically as to be denominated a jurisdictional requirement. As a procedural requirement, such service may be waived by the office of the Attorney General, as was requested by the Assistant Attorney General herein. Where it is apparent to the trial court that the constitutionality of a statute is being challenged, that court, as well as an appellate court, may sua sponte see that the Attorney General is notified thereof, and afforded an opportunity to intervene in the lawsuit. The legislature, in enacting RCW 7.24.110, did not phrase this requirement of service on the Attorney General in terms of "jurisdiction"; in view of the severe sanction of automatic dismissal for a lack of such service, it is evident that service upon the Attorney General should be deemed a procedural requirement. Insofar as *Parr* and other cases are contrary, I think they should be overruled.

Viewing service on the Attorney General as a sound and constructive requirement, I agree completely with the majority that this procedural requirement has been waived under the unequivocal circumstances present in this appeal.

Third, there is no doubt in my mind that the plaintiff has standing to litigate the issue of the constitutionality of RCW 41.20.110 under which his asserted *vested right* to a pension is now in jeopardy by the action of the Police Pension Fund Trustees. *Watson v. Washington Preferred Life Ins. Co.*, 81 Wn.2d 403, 502 P.2d 1016 (1972).

Fourth, considering plaintiff's vested right and his standing to litigate, and even assuming arguendo some substance to the lack of jurisdiction aspect emphasized in the dissent by Stafford, J., the lawsuit should not be voided and dismissed. Shorn of the various aspects of a declaratory judgment action, there still remains a traditional, simple law-

suit for a bona fide claim for relief by the plaintiff-litigant herein.

Lastly, it seems to me that dismissal of this action is both inept and circular, and can only result in a second lawsuit and a multiplicity of litigation. This I think very properly and on good legal ground can and should be avoided. For the foregoing rather briefly stated reasons, I have signed and concur in the majority opinion by Hale, J.

STAFFORD, J. (dissenting)—I dissent.

Respondent filed a claim for a declaratory judgment. He alleged that RCW 41.20.110 is unconstitutional thus entitling him to reinstatement of his pension, retroactive to the date of its termination by the Board of Trustees of the Seattle Police Department Pension Fund. The trial court granted the declaratory relief prayed for, holding that RCW 41.20.110 is unconstitutional.

Appellants, the City of Seattle and the Board of Trustees, make several assignments of error. Each stems from the declaratory relief prayed for and granted by the trial court on the basis of its declaration that RCW 41.20.110 is unconstitutional.

Respondent concedes that his action was brought for a declaratory judgment under RCW 7.24. It is not denied that RCW 7.24.110 specifically provides:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, *and if the statute,* ordinance or franchise *is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.*

(Italics mine.)

Appellants point out that the claim for declaratory relief and the trial court's declaratory judgment are based upon an asserted unconstitutionality of RCW 41.20.110. Appel-

lants' brief specifically states that ". . . the record here does not disclose that any service of proceedings herein has been made on the Attorney General, as required by RCW 7.24.110 whenever a statute is alleged to be unconstitutional." During oral argument respondent's attorney frankly admitted his failure to serve the Attorney General with a copy of the proceedings. Apparently the oversight was first discovered when he received appellants' brief on appeal. Thus, appellants have clearly established respondent's failure to comply with RCW 7.24.110.

The right to declaratory relief is purely a creature of statute. We have held in a long series of cases that the provisions of RCW 7.24.110 relative to service of the proceedings upon the Attorney General, when the constitutionality of a statute is called in question, are *mandatory* and *jurisdictional*. *Parr v. Seattle,* 197 Wash. 53, 56, 84 P.2d 375 (1938); *Roehl v. PUD 1,* 43 Wn.2d 214, 245, 261 P.2d 92 (1953); *In re Bellingham,* 52 Wn.2d 497, 499, 326 P.2d 741 (1958).[1] Similarly, we have held that absent service on the Attorney General, the trial court is without jurisdiction to hear the case. *Parr v. Seattle, supra.* In *Parr,* we also held that a judgment obtained without having secured proper jurisdiction is *void* and therefore a *nullity.* The same result was reached in *In re Bellingham, supra.*[2] The majority denigrates the importance of the required service by stating the issue was raised for the first time on appeal. That position overlooks ROA I-43 which provides in part:

the objection that the superior court had no jurisdiction of the cause . . . or that the supreme court has no jurisdiction of the appeal, may be taken at any time.

---

[1]*Accord,* 2 L. Orland, *Wash. Prac.,* Trial Practice, § 581, at 616 (3d ed. 1972); 1 W. Anderson, *Actions for Declaratory Judgments,* § 179, at 345, § 361, at 850-52 (2d ed. 1951); E. Borchard, *Declaratory Judgments,* 275 (2d ed. 1941); *see also Blodgett v. Orton,* 14 Wn.2d 270, 127 P.2d 671 (1942); *In re Estate of Bridge,* 40 Wn.2d 133, 241 P.2d 439 (1952).

[2]*Accord,* 2 L. Orland, *Wash. Prac.,* Trial Practice, § 581, at 616 (3d ed. 1972); 1 W. Anderson, *Actions for Declaratory Judgments,* § 179, at 345, § 371, at 851-52 (2d ed. 1951); *see Roehl v. PUD 1,* 43 Wn.2d 214, 261 P.2d 92 (1953).

During oral argument an assistant attorney general, who was apparently sitting in court at the behest of one of the parties, stated that the Attorney General's office had no objection to the manner in which appellants' counsel had handled the case. We were told that, as a practical matter, parties have honored RCW 7.24.110 more in the breach than in compliance. This, however, is no reason for our condoning such a breach when it is brought to our attention. While the assistant attorney general may have been satisfied with the management of this particular case, the same officer might well have been dissatisfied with the work of appellants' attorney and lack of service would have prevented his being heard on an important constitutional issue. In either event, the judgment is a *nullity* for lack of jurisdiction. As pointed out in *Clark v. Seiber*, 49 Wn.2d 502, 304 P.2d 708 (1956), the purpose of RCW 7.24.110 is to protect the public, should the parties be indifferent to the result. The state is interested in the constitutionality of its statutes as they affect the public welfare. *Parr v. Seattle, supra.*

Respondent relies on the above-mentioned statement in an effort to breathe life into the void judgment, hoping thereby to confer jurisdiction upon both the trial court and this court. Such an attempt, at this late date, is legally an exercise in futility. The judgment *is void,* not voidable. One cannot, in this way, give after-the-fact substance to the type of judgment that has been declared a nullity by our own cases. Further, we not only have held that compliance with RCW 7.24.110 is both *mandatory* and *jurisdictional,* but have stated additionally:

> In such cases, courts *cannot proceed* until all *necessary parties,* including the *attorney general,* are served as provided by the act.

(Italics mine.) *Parr v. Seattle, supra* at 56. Noncompliance with RCW 7.24.110 and the void judgment that results therefrom is clearly a jurisdictional defect that cannot be waived by the Attorney General. In fact, courts that have held as we do, that failure to comply with this section

constitutes a jurisdictional defect, have also held that the defect may not be waived by any of the parties. *Williams v. Moore,* 215 Md. 181, 137 A.2d 193 (1957); *Redick v. Peony Park,* 151 Neb. 442, 37 N.W.2d 801 (1949); *Stanley v. Mueller,* 211 Ore. 198, 315 P.2d 125, 71 A.L.R.2d 715 (1957); *Holland v. Flinn,* 239 Ala. 390, 195 So. 265 (1940); *Langer v. State,* 69 N.D. 129, 284 N.W. 238 (1939); *Worden v. Louisville,* 279 Ky. 712, 131 S.W.2d 923 (1939). *See also Zanesville v. Zanesville Canal & Mfg. Co.,* 159 Ohio 203, 111 N.E.2d 922 (1953); *Wadsworth v. Ottawa County Bd. of Educ.,* 108 Ohio App. 246, 161 N.E.2d 404 (1958); *Coleman v. Henry,* 184 Tenn. 550, 201 S.W.2d 686 (1947). For us to hold otherwise destroys the purpose of the statute set forth in *Clark v. Seiber, supra.*

The majority obtains a contrary result, holding that the Attorney General may waive the jurisdictional issue, citing *Roehl v. PUD 1, supra.* Unfortunately this end is reached, in part, by a misconception of *Roehl's* meaning. In *Roehl* the appellant sought an injunction and a declaratory judgment that a statute was *unconstitutional.* As in the instant case, he failed to serve the Attorney General pursuant to RCW 7.24.110. Unlike the instant case, however, the trial court found the statute *constitutional* and dismissed the case. Also unlike this case the Supreme Court affirmed the dismissal. A complete quotation from *Roehl,* at pages 245-46, which is only stated in minor part by the majority, reveals that both the reasoning and the result of the case are contrary to that for which the majority cites the case. The full quotation reads:

> *Not having served a copy of the complaint upon the attorney general, as required by the foregoing statute, appellant did not invoke the jurisdiction of the court in so far as declaratory relief is concerned. Parr v. Seattle,* 197 Wash. 53, 84 P. (2d) 375. Lack of jurisdiction to enter the declaratory portion of the judgment does not, however, affect the validity of the portion dismissing the complaint. See *Manlove v. Johnson,* 198 Wash. 280, 88 P. (2d) 397.
>
> *Had the trial court declared the act unconstitutional, it*

*would be necessary to remand with directions to modify the judgment by deleting such declaration.* See *Manlove v. Johnson, supra. Since, however, the declaration is to the effect that the act is valid and constitutional, it adds nothing of substance to the relief granted. The constitutionality of the act was at issue in connection with appellant's request for injunctive relief.* Therefore, the provision of the judgment which calls for dismissal of the action has implicit within it a conclusion of law to the effect that chapter 227, Laws of 1949, is valid and constitutional. *It is accordingly unnecessary to remand the judgment for modification.*

(Italics mine.)

As previously indicated, declaratory relief is a creature of statute. The instant case was brought as a declaratory judgment action under chapter 7.24 of RCW. RCW 7.24.110 makes service of the proceeding on the Attorney General both mandatory and jurisdictional. Failure to comply with RCW 7.24.110 thus renders a judgment null and void. Even though respondent admits his noncompliance with RCW 7.24.110, the majority, nevertheless, has disregarded this jurisdictional defect and has proceeded directly to the merits of the case. As a result, they have affirmed a void judgment.

Whether RCW 41.20.110 is unconstitutional is an issue that is not properly before the court at this time. This is true even though we may ultimately agree with respondent's position on the merits. Expediency, or the fact that it may be necessary to relitigate the matter with the proper parties before the trial court, is no excuse for disregard of the mandatory and jurisdictional requirements of RCW 7.24.110.

The trial court should be reversed, without prejudice, for want of proper jurisdiction to entertain the action for declaratory relief.

NEILL, WRIGHT, and UTTER, JJ., concur with STAFFORD, J.