[No. 34395. *En Banc.* October 8, 1959.]

CLYDE V. DAILEY, *Respondent*, v. THE CITY OF SEATTLE, *et al., Appellants.*[1]

[1]Reported in 344 P. (2d) 718.

*A. C. Van Soelen, Alfred N. Newbould,* and *Arthur T. Lane,* for appellants.

*Copass & Franklin,* for respondent.

HILL, J.—We are again concerned with what statute governs a policeman's retirement rights.

Clyde V. Dailey was appointed to the Seattle police department January 1, 1929. When he retired on August 3, 1955, at age fifty-three, he was a supervising captain, a position he had held for more than eight years; his salary for more than a year preceding his retirement had been $520 a month.

The board of trustees of the relief and pension fund of the Seattle police department took the position that the applicable act, governing his retirement, was Laws of 1955, chapter 69, p. 417.

Section 3 of that act [*cf.* RCW 41.20.050] is in part as follows:

"Whenever a person has been duly appointed, and has served honorably for a period of twenty-five years or more, as a member, in any capacity, of the regularly constituted police department of a city subject to the provisions of this chapter, the board may order and direct that such person be retired, and the board shall retire any member so entitled, upon his written request therefor. The member so retired shall be paid from the fund during his lifetime a pension equal to forty-five percent of the amount of salary attached to the rank held by the retired member for the year preceding the date of his retirement: *Provided,* That no pension shall exceed an amount equivalent to one-half the basic salary of a member holding the rank of captain:

*Provided further*, That for each additional year of honorable service in excess of twenty-five years, but not to exceed an additional five years of service, the retirement benefit percentage herein provided shall be increased one percent per year. . . ."

It is apparent that under the above-quoted statute, Captain Dailey's right of retirement was not dependent upon the discretion of the pension board, but was absolute on his written request therefor. The amount, however, was predicated on his years of service, with a minimum of forty-five per cent of his salary for the year preceding his retirement with twenty-five years of service, and a top of fifty per cent with thirty years or more of service. His service of twenty-six years, seven months, and three days entitled him to 46.58904 per cent of his pay for the year preceding his retirement, which would have been $242.26 a month. However, there is a proviso in the above-quoted section that no pension shall exceed an amount equivalent to one-half of the basic salary of a member holding the rank of captain. It is conceded that the basic salary of a captain is $465 a month, which would make the maximum pension allowable $232.50.

The board originally computed Captain Dailey's pension at 46.58904 per cent of $465, and allowed him a pension of $216.64. Thereafter, the board apparently concluded that the pension should have been computed on the basis of 46.58904 per cent of $520 a month, but since the pension thus arrived at would have exceeded the maximum they could allow under the 1955 act, they awarded him the maximum pension of $232.50 a month, retroactive to the date of his retirement.

Captain Dailey made demand for a pension of $260 a month, that being one-half of the salary he had been receiving as supervising captain. It was his position that the applicable act was Laws of 1915, chapter 40, which was in effect at the time of his appointment in 1929.

Laws of 1915, chapter 40, § 2, p. 138, reads as follows:

"Whenever any person at the taking effect of this act, or thereafter, shall have been duly appointed or selected and

sworn, and shall have served for twenty years or more, in the aggregate, as a member, in any capacity or rank whatever, of the regularly constituted police department of any such city which may hereafter be subject to the provisions of this act, and shall have reached the age of sixty years, or shall have served not less than twenty-five years continuously, and not have reached the age of sixty years, said board may order and direct that such person be retired from further service in such police department, and from the date of the making of such order the service of such person in such police department shall cease, except in cases of emergency as hereinafter provided, and such person so retired shall thereafter, during his lifetime, be paid from such fund a yearly pension equal to one-half of the amount of salary attached to the rank which he held in said police department for the period of one year next preceding the date of such retirement."

It is apparent that under the 1915 act quoted above, Captain Dailey's right of retirement was not absolute; the board could retire him, but was not obligated so to do. If his request for retirement was granted, as it was, he was entitled to a

" . . . yearly pension equal to one-half of the amount of salary attached to the rank which he held in said police department for the period of one year next preceding the date of such retirement."

Passing the question, for the moment, of whether the position of supervising captain was the "rank" which he held in the police department, he would, if retired, be entitled to a pension of $260 a month.

This action is brought to compel the payment of a pension in that amount. From an order directing the payment of such a pension, the city of Seattle and the pension board appeal. Two questions are argued on the appeal:

1. Was supervising captain (salary $520 a month, the rank which Captain Dailey had held for the year preceding his retirement, or was his "rank" that of a captain (salary $465 a month) assigned supervisory duties for which he received additional compensation?

We agree with the trial court that the position of supervising captain, as established by the ordinances of the

city of Seattle, is a "rank," as that term is used in both the 1915 and the 1955 policemen's relief and pension acts. See portion of opinion in *Eisenbacher v. Tacoma* (1958), 53 Wn. (2d) 280 at page 285 under [4], 333 P. (2d) 642.

2. Did Captain Dailey retire under the 1915 or the 1955 act? Or, stated somewhat differently, are the terms of Laws of 1955, chapter 69, heretofore cited, binding upon Captain Dailey?

The applicable principles of law are found in *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536; *Eisenbacher v. Tacoma, supra*; and *Letterman v. Tacoma* (1958), 53 Wn. (2d) 294, 333 P. (2d) 650.

In *Eisenbacher* the court said (p. 267),

"In *Bakenhus v. Seattle* (1956), 48 Wn. (2d) 695, 296 P. (2d) 536, this court stated:

" ' . . . the employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions. . . .'

"We held in *Bakenhus* that contractual pension rights of the claimant (a policeman who had retired after having been employed for the requisite statutory period of service) could not, constitutionally, be modified in such a manner as to greatly reduce the value of those pension rights. We decided that the 1937 amendment to the *police* relief and pension act *could not, constitutionally, be applied to Mr. Bakhus as a limitation on his pension rights*."

and further (p. 268),

"The proper interpretation of the firemen's relief and pension act and of the decision in *Bakenhus, supra,* is as follows: An employee who accepts a job to which a pension and relief plan or system is applicable contracts for a pension and relief plan or system substantially in accord with the then existing legislation governing the same; modifications of a pension plan or system cannot be imposed on the employee unless the changes are equitable to the employee. Permissible modification could, in some cases, completely destroy inchoate benefits of third parties. *Packer v. Board of Retirement* (1950), 35 Cal. (2d) 212, 217 P. (2d) 660. The contractual rights of the *employee* to a 'substantially

similar' pension and relief system belong only to the employee until all contingencies have been fulfilled.

"The specific question, therefore, to be decided is whether the 1935 amendment to the firemen's relief and pension act results in permissible (*i.e.*, reasonable and equitable) changes in the act as it existed prior to the amendment *as applied* to respondents or respondents' husbands, as the case may be."

Again in *Letterman v. Tacoma, supra,* the court said (p. 280),

" . . . The *Bakenhus* case specifically dealt with the constitutionality of the 1937 police pension act as applied to Mr. Bakenhus; but the principle used in reaching that decision is general in nature. The principle is: An employee who accepts a job to which a pension and relief plan or system is applicable contracts for a pension and relief plan or system substantially in accord with the then existing legislation governing the same; modification of a pension and relief plan or system can be effected without the consent of an employee if the changes are equitable as to such employee."

*Bakenhus* established a contract concept or analogy in the various municipal pension systems. It does not follow, as *Eisenbacher* and *Letterman* clearly indicate, that all of the principles of contract law can be applied to the so-called contract for a pension. The substance of our holdings is:

1. That employees who accept employment to which pension plans are applicable contract thereby for a substantial pension, and are entitled to receive the same when they have fulfilled the prescribed conditions.

2. That employees (prospective pensioners) will be presumed to have acquiesced in legislative modifications that do not unreasonably reduce or impair existing pension rights; or, stated positively, if the modifications are reasonable and equitable.

3. That an act of the legislature, making a change in pension rights, will be weighed against pre-existing rights in each individual case to determine whether it is reasonable and equitable. If the over-all result is reasonable and equitable, the employees (prospective pensioners) will be presumed to have acquiesced in the modifications; if the

over-all result is not reasonable and equitable, there will be no such presumption.

We held in *Eisenbacher v. Tacoma, supra,* that the 1935 amendment to the firemen's relief and pension act (p. 268),

" . . . provides no corresponding benefit to the employee *to counterbalance the loss of pension rights* resulting from the imposition of the one hundred twenty-five dollars maximum pension limitation. . . ."

and further,

" . . . The amendment, considered as a whole, is clearly detrimental *as applied* to respondents, or respondents' husbands. We find nothing in the record before us, nor in the legislative records, which indicates that the one hundred twenty-five dollars maximum pension limitation was dictated by some overriding public policy."

*Bakenhus* had achieved the same result, with reference to the 1937 amendments to the policemen's relief and pension act imposing a one hundred twenty-five dollar maximum pension limitation.

*Eisenbacher* and *Letterman* take a realistic view as to the facts of legislative life in the realm of pension legislation for public employees, and agree that the acquiescence of the employees concerned is to be presumed where some advantages have been sacrificed to gain compensating or greater benefits.

 Captain Dailey's pension rights are to be determined by the latest act which could constitutionally be applied to him. *Eisenbacher v. Tacoma, supra; Letterman v. Tacoma, supra.*

We shall, therefore, make a brief survey of the police pension legislation subsequent to Captain Dailey's becoming a member of the Seattle police department, January 1, 1929.

In 1929, the first year of his employment, his deducted monthly contributions to the pension fund were increased from one and one-half per cent to two per cent of his monthly salary; at the same time, considerable other municipal revenue was also made available to the fund (Laws of 1929, chapter 101, p. 199). Such available revenue was again sub-

stantially increased in 1933 (Laws of 1933, chapter 30, p. 180). This increase in the percentage of salary deductions may have been for the purpose of protecting the financial stability of the pension fund, and because of the very considerable increase in the amount of other funds made available; at least, to date, no question has been raised by anyone as to its propriety or validity.

The 1937 act (Laws of 1937, chapter 24, p. 62) was held not constitutionally applicable to *Bakenhus*; and we agree it is not constitutionally applicable to Captain Dailey because its detrimental limitation of the maximum pension to one hundred twenty-five dollars a month is held to outweigh any benefits such as (a) the absolute right to retirement after twenty-five years of service; (b) the removal of the restriction that the pensioner had to continue to be a resident of the state to receive the pension (this was imposed by Laws of 1909, chapter 39, § 10, p. 63, and was in effect when Captain Dailey entered upon his service with the police department in 1929); and (c) the removal of the restriction that death must be from "natural causes" (contained in the 1915 act) to entitle his widow to one thousand dollars upon his death. It was also the 1937 act which exempted any salary over two hundred fifty dollars a month from the two per cent deduction for the pension fund, obviously because it limited the pension to half of that amount.

Up to this point, the 1915 act is the one which governs Captain Dailey's eligibility for retirement and the amount of his pension, unless the 1955 act (Laws of 1955, chapter 69) is applicable to him. He contends that it is not.

The mere fact that the 1955 act is, in some respects, less favorable than the 1915 act is not decisive of the proposition that the 1955 act is unconstitutional, as applied to Captain Dailey. The test is, as we have seen, whether the pension received under the challenged act is substantial; and whether the changes are reasonable and equitable.

As we read the record, the police pension board thought that Captain Dailey was seeking retirement under the 1955

act, which gave him an absolute right to retire after twenty-five years of service regardless of age.

The 1915 act, under which Captain Dailey insists he made his application to retire, gave the police pension board the right to retire any member of the police department having twenty-five years of service, regardless of age.

The distinction between an individual having the right to retire after twenty-five years of service, and the pension board having the right to retire him after twenty-five years of service is too obvious to labor. This was a distinct advantage to Captain Dailey under the 1955 act, if he elected to avail himself of it. However, there were disadvantages, because—coupled with the absolute right of retirement after twenty-five years of service—there was a provision in the 1955 act for a pension only forty-five per cent of the salary attached to the rank held for one year prior to retirement. This pension increased one per cent for each year after twenty-five, until thirty years of service had been reached, after which he would be eligible to receive a pension of fifty per cent of the pay of the rank held for one year prior to his retirement. The result is that there must be thirty years of service before a member of the police department can retire, as a matter of right, with a pension of fifty per cent of the pay he received for the year prior to retirement.

Under the 1915 act, retirement after twenty-five years carried with it a pension of fifty per cent of the pay of the rank held for one year prior to retirement, but such retirement was dependent upon the willingness of the board to grant it; they could require thirty years of service or more, if they so desired, from men under sixty years of age.

We are unable to say that surrendering a certain percentage of retirement pension for an absolute right to retire after twenty-five years is not reasonable and equitable, with the option given to the police officer to continue in service if he so desired and increase his pension rate with each year of service.

Other provisions in the act would make the changes, so far as Captain Dailey is concerned, unreasonable and inequitable. We refer to the increase in payroll deduction

from two per cent to four and one-half per cent with no increase in benefits so far as he is concerned; indeed, it entailed a decrease from the $260 he would have received under the 1915 act to $232.50, the maximum he could receive under the 1955 act.

We can agree that under the reasonable and equitable test of *Eisenbacher* and *Letterman* that the provisions of the 1955 act were not reasonable and equitable, as applied to Captain Dailey. It is to be noted that he retired less than two months after the 1955 act became effective and there was no question of long, continued acquiescence in its terms.

Our conclusion that, applying the reasonable and equitable test, the 1955 act is not applicable to Captain Dailey does not mean that it could not be of great benefit to many police officers. For those who entered upon a police department career subsequent to the effective date of the 1937 act, the repeal by the 1955 act of the one hundred twenty-five dollar a month limitation contained in the 1937 act and applicable to them, and the substitution of one-half of a captain's pay as the maximum ($232.50 in Seattle, as of now), together with other benefits, might be most beneficial.

We are satisfied that Captain Dailey could and did retire under the terms of the 1915 act, and that the terms of chapter 69, Laws of 1955, are not applicable to his retirement.

The trial court correctly concluded that he was entitled to a pension of $260 a month, retroactive to the beginning of his retirement. The judgment appealed from is affirmed.

WEAVER, C. J., MALLERY, DONWORTH, FINLEY, ROSELLINI, FOSTER, and HUNTER, JJ., concur.

OTT, J., concurs in the result.