EMILE VALLET, *Respondent*, v. THE CITY OF SEATTLE *et al.*, *Appellants.*\*

*A. L. Newbould* and *E. Neal King*, for appellants.

*Copass, Franklin & Watkins* and *Ralph E. Franklin*, for respondent.

DONWORTH, J.†—This action was instituted by Emile Vallet on October 24, 1966 against the city of Seattle and the members of the Board of Trustees of the Police Pension Fund of the Seattle Police Department (herein called the board). The object of the action was to obtain a judicial determination as to the amount of pension to which Mr. Vallet was entitled at the time of his retirement under the police pension laws of the state of Washington (herein called pension laws).

On June 29, 1967 the case came on for trial and resulted

\*Reported in 459 P.2d 407.

†Justice Donworth is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

in a judgment in favor of Mr. Vallet. Thereafter, the city and the board appealed therefrom to this court. Prior to oral argument, Mr. Vallet died (on February 19, 1969) and by appropriate order, his widow, as administratrix of his estate, was substituted as respondent on this appeal.

There are no disputed questions of fact involved in this case. Respondent's status as a retired police officer may briefly be summarized as follows: On February 28, 1922 he was appointed as a regular patrolman on the Seattle police force and began contributing into the police pension fund in the form of deductions from his salary. His service with the Seattle Police Department was continuous for nearly 43 years from the date of his appointment in 1922 until January 6, 1965, which was the date of his retirement.

Over the years of his employment, respondent gradually rose through the ranks of the Seattle police force. On January 1, 1957 he was appointed Inspector of Police, and he held this rank until the date of his retirement.

When respondent retired in 1965, the salary attached to his position with the Seattle police force was $870 per month and his pension amounted to one-half thereof, to wit, $435 per month. Subsequent to his retirement, new salary ordinances were enacted for the city of Seattle which went into effect on January 1, 1966 and January 1, 1967.[1] The former raised the salary of Inspector to $905 per month and the latter fixed the salary for that rank at $979.17 per month. At the commencement of the trial, respondent filed a supplemental complaint in which he alleged the enactment of these salary ordinances.

On March 18, 1966, after the enactment of the first salary increase, respondent, not having received an increase in his pension, wrote the trustees of the police pension fund requesting an increase of $17.50 per month in his pension as of January 1, 1966. He asserted that the law provided that he receive one-half of the salary of the rank of Inspector

[1]Since the trial court's judgment was entered July 7, 1967, there is nothing in the record to show whether there was another salary increase for the year 1968 or for the first 50 days of 1969 prior to respondent's death.

and that when the city council increased the salary schedule for that rank, the amount of his monthly pension was thereby increased. This request was denied by the board which rejected his interpretation of the applicable pension statutes which will be discussed later in this opinion. Following the foregoing determination by the board that he was not entitled to one half of the new salary attached to the rank of Inspector, respondent commenced this action in the trial court to recover the increased amount.

The trial court, after hearing all the evidence, ruled in favor of respondent. In its judgment, the trial court awarded him the amount of accrued pension found to be due him under the pension laws of the state and decreed that:

> [P]ursuant to the provisions of Chapter 191 of the Laws of 1961 plaintiff is entitled to be paid and should be paid from the Police Pension Fund of the City of Seattle during his lifetime a pension equal to fifty per cent (50%) of the amount of salary *which is at anytime after the date of his retirement, January 7, 1965, attached to the position of Inspector of Police of the City of Seattle.* That commencing January 1, 1966, plaintiff was entitled to be paid from the Pension Fund a pension in the amount of $452.50 per month. That commencing January 1, 1967, plaintiff was entitled to be paid a pension from the Pension Fund in the amount of $489.58 per month. That defendants are ordered and directed to pay a monthly pension to plaintiff from the Police Pension Fund in accordance herewith.

(Italics ours.)

The first issue before us involves the city's challenge of the trial court's finding of fact No. 5 which reads in part as follows:

> That there was no waiver by plaintiff nor did any estoppel arise with respect to plaintiff relative to pension rights which plaintiff had under applicable laws.

The facts giving rise to this issue revolve around an incident which occurred in December, 1964 when respondent applied for his pension. At that time he was informed that it was necessary for him to make an election in writ-

ing as to the precise pension he was seeking. The city maintained that he had a choice of retiring either under the pension law in effect at the time he began his employment with the police force in 1922 or retiring under a subsequent amendment to that law which went into effect in 1961. In response to that demand from the city, respondent sent the following letter to the board:

> Incident to my application for service retirement effective January 6, 1965, request is made for a pension at one half my salary as Inspector.
>
> This application for retirement does not constitute a waiver of any rights that may exist under the Supreme Court decisions in the Bakenhus and Dailey cases.
>
> s/Emile Vallet

In their answer to respondent's complaint, the city included an affirmative defense alleging that respondent was estopped to assert a claim for an increase in his pension. The thrust of its argument was that respondent had elected to retire under the pension law in effect at the time he began his employment and that in accepting payments under that law for 14 months, he was now estopped to claim the increase allowed under the 1961 law.

The trial court concluded in finding of fact No. 5 that there was no waiver by respondent and that an estoppel did not arise relative to his pension rights under applicable law. The city has directed one of its assignments of error to this finding by the trial court, thus giving rise to this first issue.

■ We have previously held that a civil servant must be paid for his services the amount prescribed by law and that any agreement to accept a lesser sum is contrary to public policy and hence is void. *Malcolm v. Yakima County Consol. School Dist. 90*, 23 Wn.2d 80, 159 P.2d 394 (1945); *Watkins v. Seattle*, 2 Wn.2d 695, 99 P.2d 427 (1940); *Chatfield v. Seattle*, 198 Wash. 179, 88 P.2d 582, 121 A.L.R. 1279 (1939), and cases cited therein at 186.

Although the foregoing decisions of this court have been related to salaries, we believe the principle of law announced in those cases is equally applicable to pension pay-

ments due pensioners under the pension laws of this state.

Therefore, in our view, the statement of election signed by respondent is void and of no effect. It could not and did not constitute a waiver of any rights which respondent had under the applicable pension laws in this state. The city, as a governmental entity, has no choice but to compensate respondent according to the provisions of the law then in force. Accordingly, this assignment of error is without merit.

Since the statement of election signed by respondent was invalid, we next proceed to a determination of what state pension law controls the status of respondent's retirement.

In our analysis of this question, reference must be made to the provisions of RCW 41.20.050 which governs the retirement of police officers in this state. When respondent commenced his employment with the city in 1922, the version of the aforesaid statute then in force, which was enacted by the 1915 legislature, read in part as follows:

> [A]nd such person so retired shall thereafter, during his lifetime, be paid from such fund a yearly pension equal to one-half of the amount of salary attached to the rank which he held in said police department for the period of one year next preceding the date of such retirement.

Laws of 1915, ch. 40, § 2, p. 139.

This statute was amended and reamended a number of times between 1915 and 1961, but those amendments do not concern us in a resolution of this controversy. The 1961 amendment, which was in effect at the time of respondent's retirement from the police force, however, is relevant to our discussion. It reads in part as follows:

> The member so retired hereafter shall be paid from the fund during his lifetime a pension equal to fifty percent of the amount of salary at any time hereafter attached to the position held by the retired member for the year preceding the date of his retirement: *Provided*, That no pension shall exceed an amount equivalent to one-half the salary of captain, and all existing pensions shall be increased to not less than one hundred fifty dollars per month as of July 1, 1957.

Laws of 1961, ch. 191, § 1, pp. 1853-54.

A review of the 1915 and the 1961 versions of RCW 41.20.050 reveals that the 1915 statute, which was in effect at the time respondent began his employment, provided for a fixed pension equal to one-half of the amount of salary attached to respondent's rank which he had held during the year preceding the date of his retirement. Assuming respondent could retire under the 1915 act and accept the benefits provided for him therein, he would be entitled to receive, during his years of retirement, one-half the pay of his rank of Inspector. This pension, however, would not fluctuate or escalate on a sliding scale with each pay raise given the rank of Inspector, or any other rank, in the years following the date of his retirement. It would, at all times, remain fixed.

In the event respondent could retire under the 1961 act, he would be entitled to one-half the salary attached to his rank (Inspector) for the year preceding the date of his retirement. In the 1961 act, however, there also appears a limiting proviso which, by its terms, limits respondent's retirement pension to no more than one-half the rate of pay attached to the rank of Captain.[2] To offset the obvious detrimental effect of this proviso, the 1961 legislature abolished the fixed pension concept contained in the 1915 act and succeeding acts prior to 1961 relating to police officers' pensions. The effect of this modification was to place the pensions on a sliding scale. Under that sliding scale formula, every time the salary attached to the rank of Captain would be raised by the city council after respondent had retired, he, as a retired Inspector, would be entitled to one-half of that raise correspondingly in his pension. In other words, a sliding scale arrangement was created by

---

[2]The first limitation on the amount of police officers' pensions was contained in chapter 24, Laws of 1937. This limited the maximum amount of the officers' pensions to $125 per month. It was in effect until 1955 when it was eliminated and the present limitation, *i.e.* one-half the salary of the rank of Captain, was substituted by chapter 69, Laws of 1955. Chapter 78, Laws of 1959 contained the same provisions in effect. Chapter 191, Laws of 1961 changed the language of the previous limiting provisos to read as it is quoted elsewhere in this opinion.

18

the legislature, which limited the base pension of those retiring above the rank of Captain at no more than one-half the rate of pay attached to the rank; but, unlike the 1915 act, the retired Inspector would be entitled to an escalation over his base retirement pay each time the pay rate attached to the rank of Captain was increased.

At this point, reference should be made to the salary ordinances in effect in Seattle from 1965 through 1967 relating to the rank of Captain and the rank of Inspector.

| Year | Ordinance | Monthly Salary of Captain | Monthly Salary of Inspector |
|------|-----------|---------------------------|------------------------------|
| 1965 | 93500 | $775 | $870 |
| 1966 | 94300 | $805 | $905 |
| 1967 | 95300 | $875 | $979.17 |

Under the express terms of the 1915 statute, assuming it applies, respondent would be entitled, during the term of his life, to a *fixed* pension of one-half the rate of pay attached to the rank of Inspector for the year preceding the date of his retirement (January 6, 1965) without the benefit of an escalating clause or detriment inherent in the limiting proviso appearing in the 1961 law above-quoted, which restricts the amount of pension to one-half of the salary attached to the rank of Captain. All that respondent would be entitled to receive under the 1915 act through the years of his retirement would be a *fixed* pension of $435 per month.

Assuming that the 1961 act applies, the effect of that act on respondent would be to allow him to retire at one-half the rate of pay attached to the rank of Inspector but his pension would be limited, by the terms of that act, to no more than one-half the rate of pay attached to the rank of Captain. The benefit, however, under this act would be in the provisions permitting a sliding scale pension based on future salary increases, accorded those holding the rank of Captain, by the city council. This benefit is graphically demonstrated by a review of the salary increases by the city council from 1965 through 1967 and their corresponding effect on respondent's pension. If respondent were held to have retired under the 1961 act, he would have been entitled to more than approximately $358 per month in

retirement pay in 1965. By 1967, however, due to the implementation of the sliding scale, his monthly retirement pay would have been raised by the city council's increases in the Captain's pay to approximately $2 more per month than that given the respondent under the 1915 act, which contains the fixed pension. As is shown by the effect of the 1961 act on respondent's situation, this amount may be increased from year to year depending upon future salary ordinances.

At the board level and before the trial court, respondent, in essence, contended that he was entitled under *Bakenhus v. Seattle,* 48 Wn.2d 695, 296 P.2d 536 (1956) and *Dailey v. Seattle,* 54 Wn.2d 733, 344 P.2d 718 (1959), to retire under the 1915 law at the rank of Inspector and that the subsequent legislative modifications did not take away this right. He also asserted that he was entitled to the benefit of the escalator clause contained in the 1961 amendment to the 1915 act. In summary, respondent submits, therefore, that he may retire at the rate of pay attached to the rank of Inspector with the benefit of the escalating clause. The end result of such a theory would be to permit him to take the beneficial aspects under *both* the 1915 and 1961 laws without accepting the limiting proviso of the 1961 law, which provides that *no* pension shall exceed the amount of any more than one-half of a Captain's salary.

In essence, the argument of the city is that the *Bakenhus* rule does not allow the selection by respondent of the best parts of several pension plans, but only requires the application of the most favorable statute to respondent's status at the time of his retirement. To permit respondent to receive the most beneficial parts of the 1915 and 1961 acts to the exclusion of any detriments contained therein would result in absurd consequences to the whole pension plan system.

■ Despite the city's arguments, the trial court accepted the theory of selection propounded by respondent. We think its resolution of the issues, referred to in the remaining assignments of error, is incorrect.

20

In *Bakenhus,* we stated at 48 Wn.2d 701-02:

Under the rule followed there, and the rule which we adopt here, the employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions. His pension rights may be modified prior to retirement, but only for the purpose of keeping the pension system flexible and maintaining its integrity. The doctrine was most recently stated in the consolidated cases of *Allen v. Long Beach* and *Alger v. Long Beach,* 45 Cal. (2d) 128, 287 P. (2d) 765 (1955), as follows:

"An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citing cases]. Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. [Citing cases.]"

Thereafter, we said in *Dailey,* at 54 Wn.2d 738-39, when analyzing the Bakenhus rule:

*Bakenhus* established a contract concept or analogy in the various municipal pension systems. It does not follow, as *Eisenbacher* [53 Wn.2d 280, 333 P.2d 642 (1958)] and *Letterman* [53 Wn.2d 294, 333 P.2d 650 (1958)] clearly indicate, that all of the principles of contract law can be applied to the so-called contract for a pension. The substance of our holdings is:

1. That employees who accept employment to which pension plans are applicable contract thereby for a substantial pension, and are entitled to receive the same when they have fulfilled the prescribed conditions.

2. That employees (prospective pensioners) will be presumed to have acquiesced in legislative modifications that do not unreasonably reduce or impair existing pension rights; or, stated positively, if the modifications are reasonable and equitable.

3. That an act of the legislature, making a change in pension rights, will be weighed against pre-existing rights in each individual case to determine whether it is reasonable and equitable. If the over-all result is reasonable and equitable, the employees (prospective pensioners) will be presumed to have acquiesced in the modifications; if the over-all result is not reasonable and equitable, there will be no such presumption.

Where the modifications in a pension plan are reasonable and equitable, they are considered under the foregoing cases to be constitutional. In such cases, a pensioner's rights will be determined by the latest act which can be constitutionally applied to him. *Dailey v. Seattle, supra; Eisenbacher v. Tacoma,* 53 Wn.2d 280, 333 P.2d 642 (1958); *Letterman v. Tacoma,* 53 Wn.2d 294, 333 P.2d 650 (1958).

From the foregoing decisions, it is evident that a pension plan can be modified by the legislature, after its enactment, where the modifications are reasonable and equitable. Where the changes are reasonable and equitable, the pensioner will be presumed to have acquiesced in the modification. The modifications then become the law and are constitutional as to the pensioner's retirement rights. In such cases, the pensioner derives his right to a pension from the latest law and he must retire thereunder.

If the 1961 act's modifications of the 1915 act can be considered as reasonable and equitable modifications of the respondent's pension rights, then, respondent acquires his pension rights from the 1961 act rather than the 1915 act. The language of our past decisions does not contemplate a situation whereby a pensioner is entitled to select the best parts of several pension acts relating to him. To hold otherwise would have a serious effect on the everyday administration of pension plans in this state.

Our review of the 1961 and 1915 acts, relating to respondent's pension rights under the pension laws, shows, in our opinion, a corresponding benefit to counterbalance the loss of respondent's rights to a fixed pension under the 1915 law. Under the 1961 act, he was given the benefit of a sliding scale increase or escalator clause based upon future

salary adjustments made by the city council affecting those holding the rank of Captain in the active police force. The practical effect of this sliding scale was shown earlier in the opinion when we analyzed the respondent's status under the 1961 act, assuming it applied to him. Such a system, we think, is better suited to thwart the severity of inflation's effect on fixed income and is preferable to the old system. The detrimental element of providing that those who retire at the rank of Inspector are limited in their pension payments to no more than one-half of the salary of Captain, which is a lower rank in the Seattle Police Department, we believe, is outweighed over a period of years by the practical effect of the escalating provision.

Therefore, it is our view that the modification to respondent's pension rights is reasonable and equitable and respondent must, therefore, retire under the 1961 act and cannot select the most favorable parts of the 1915 and 1961 acts as a basis for his pension rights.

The judgment of the trial court is reversed and the cause is remanded for proceedings consistent with this opinion. The trial court may hold a further hearing to receive and consider evidence regarding any change made in the salary of Captain between July 7, 1967 and February 19, 1969.

HUNTER, C. J., FINLEY, WEAVER, and McGOVERN, JJ., concur.

November 26, 1969. Petition for rehearing denied.