[No. 33218-0-I.   Division One.   June 20, 1994.]

MELVIN D. HELGESON, ET AL, *Appellants,* v. THE CITY OF MARYSVILLE, *Respondent.*

*Bruce Clement* and *Reaugh Fischnaller & Oettinger,* for appellants.

*Grant K. Weed, City Attorney,* for respondent.

[As amended by order of the Court of Appeals August 24, 1994.]

PEKELIS, A.C.J. — Melvin and Edith Helgeson (the Helgesons) appeal the denial of their motion for summary judgment and the grant of the City of Marysville's (the City or Marysville) cross motion for summary judgment. The Helgesons contend that their motion should have been granted, arguing that the 1978 Stipulation of Settlement (the settlement), in which they expressly waived their right to any payment of medical services under RCW 41.26, the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, Plan I (LEOFF I), was void ab initio. They further contend that the City's summary judgment motion should have been denied, arguing that neither the statute of limitations nor the doctrine of equitable estoppel bars their claim. We affirm.

The events leading up to this appeal date began in January 1963, when Melvin Helgeson (Helgeson) began working as a City of Marysville firefighter. On October 18, 1972, Helgeson was terminated "for cause" from his position as the City of Marysville's fire chief, which the Marysville Civil Service Commission later upheld. Two days later, Helgeson applied for LEOFF I duty disability retirement benefits pursuant to RCW 41.26. His application was based on injuries he sustained while employed as a firefighter. The Snohomish County Disability Board (Local Board) granted Helgeson a duty disability retirement allowance on March 7, 1973. On July 12, 1973, the City appealed the Local Board's decision to the Washington Law Enforcement Officers and Fire Fighters' Retirement Board (the LEOFF Board) and to the superior court, alleging numerous substantive and procedural errors in the Local Board's decision.

Between 1975 and 1978, the parties engaged in on-again, off-again settlement negotiations. In his declaration, Helgeson states that the City proposed dropping its appeal of his disability retirement in exchange for his agreement to waive payment of any medical benefits by the City under RCW 41.26.150. In his affidavit, James H. Allendoerfer, then the attorney for the City, states that an initial attempt was made to settle in 1975, at which time Helgeson was represented by attorney Richard B. Johnson (Johnson). Allendoerfer further states that, to the best of his recollection, Johnson had initiated the settlement negotiations.

On May 27, 1975, Allendoerfer wrote to Wayne Williams, the assistant attorney general who represented the Department of Retirement Systems (DRS) at that time, seeking an "opinion as to whether a member of the LEFF [sic] system has the power to waive rights against his former employer which the legislature has granted him." In his July 3, 1975, reply, Williams stated that "it appears to me that such a waiver would be void and unenforceable" based on *Vallet v. Seattle*[1] and in the absence of authority holding that, in a contested case, a public employee may waive a portion of his compensation to achieve a settlement. The Helgesons claim that they never received a copy of this letter.

On May 26, 1978, the parties executed a settlement in which the City agreed to forgo its appeal of Helgeson's disability retirement and dismiss with prejudice its lawsuit filed in superior court in exchange for the Helgesons' waiver of all claims against the City for payment of medical services and benefits pursuant to RCW 41.26.150. By entering into the settlement, Helgeson continued to receive his duty disability retirement allowance from DRS. The settlement provided in part:

6. The effectiveness of this agreement is subject to the entry of an order by the Washington State [LEOFF] Retirement Board . . . dismissing the appeal of the City of Marysville, approving the terms of the settlement herein, denying MELVIN D. HELGESON the right of any past, present and future claims for medical

[1]77 Wn.2d 12, 459 P.2d 407 (1969).

benefits against the City . . . by reason of his disability retirement, and approving all other aspects of MELVIN D. HELGESON'S pension retirement under the Washington State Law Enforcement Officers' and Fire Fighters' Retirement System Act.

In his declaration, Helgeson states that he was "totally broke" and could not afford legal representation when the settlement was executed. He also declares that he had signed the settlement because he needed the money from a year's worth of retirement disability allowance benefits, which he claims that the City had withheld.[2]

In contrast, Allendoerfer declares that to the best of his recollection he had spoken with the Helgesons' attorney about the settlement and that their attorney was aware of and had reviewed the settlement before it was executed.[3] Allendoerfer further declares that at the time the settlement was executed he did not "know of anything that would lead one to believe that [the Helgesons] were financially burdened or under any particular pressure to settle" or that "they were signing the document involuntarily".

In a July 7, 1978, letter to Williams, Allendoerfer enclosed a proposed order by which the LEOFF Board could approve the settlement. In the letter, which recites that Helgeson received a copy, Allendoerfer wrote:

> You have indicated that the [LEOFF Board] has no objection to the Stipulation between the City of Marysville and Melvin D. Helgeson relating to Waiver of Medical Benefits pursuant to RCW 41.26.150, but the Board is reluctant to make such an order itself. The City of Marysville is unwilling to dismiss its appeal unless it is assured that the [waiver] is effective and enforceable. The City would have no objection, however, if the Board were to merely incorporate and approve the settlement

---

[2]Allendoerfer, however, disputes that the City withheld Helgeson's disability retirement allowance, arguing that only DRS, not the City, is responsible for the payment of a LEOFF I member's retirement allowance. Furthermore, a November 1, 1984, letter from DRS to Helgeson confirms that Helgeson did receive these benefits from his retirement date of October 18, 1972.

[3]Although Johnson, Helgeson's former attorney, could not remember whether he had reviewed the settlement or any specific details about his representation of Helgeson, the record indicates that sometime prior to October 25, 1977, Allendoerfer sent a revised draft of the settlement to Johnson and that he also telephoned Johnson regarding the matter.

agreement . . ., rather than entering an Order itself referring to the medical benefits.

On July 27, 1978, Williams wrote to Allendoerfer and Helgeson informing them that the LEOFF Board had adopted the proposed order and would consider adopting it as a final order, stating:

> You will note that the proposed order specifically recognizes the existence of your settlement agreement and incorporates it. The proposed order stops short of ratifying and approving the terms of the settlement.

Williams requested that the parties inform him whether the proposed order was acceptable to them and that "any comments, suggestions or objections" should be received no later than August 16, 1978.

In an August 3, 1978, reply to Williams, Allendoerfer stated that the City would agree to the LEOFF Board's proposed order so long as it was expressly understood that the Helgesons' waiver of medical benefits was "effective and enforceable". This letter, which states that a copy was sent to Helgeson, further stated:

> If either Mr. Helgeson or the Retirement Board disagree with this interpretation of the proposed Order, I must be notified on or before August 21, 1978, so that Marysville may proceed with appeal of this case.

In an August 9, 1973, reply to Allendoerfer, Williams stated, in part:

> It does seem to me that whether or not the State Retirement Board believes the stipulation between the City . . . and Mr. Helgeson is effective and enforceable, is totally irrelevant. As you know, the State Board has absolutely no jurisdiction over or authority to grant medical benefits. The Board is therefore in no position to either require the City to make the payments nor to prevent Mr. Helgeson from requesting them.

> It would appear to me that since this matter is in dispute, the settlement should be binding between the parties. See generally, 15A Am.Jur.2d Compromise and Settlement § 25.

The LEOFF Board informed Allendoerfer and Helgeson by way of a November 28, 1978, letter that it had entered its final order on November 20, 1978. The letter stated that the

final order incorporated the settlement, but did not specifically ratify and approve it. The letter further stated:

> As you know, the State Board has absolutely no jurisdiction regarding the granting of or denial of medical benefits. Therefore, the Board's position is that whether or not it believes the stipulation is effective and enforceable, is irrelevant.

After the settlement, Helgeson procured his own health insurance. Since then, Helgeson has developed severe lung problems caused by his work as a firefighter. A few years prior to bringing the underlying action, one of Helgeson's medical bills was sent to the City for payment, which the City refused.

On October 14, 1992, the Helgesons brought suit seeking, *inter alia*, to have the waiver of medical benefits held void. The Helgesons moved for summary judgment on two alternative grounds: (1) the settlement, in which they waived any right to payment of medical services under LEOFF I, was void ab initio and (2) the settlement never became effective because of the nonoccurrence of a condition precedent contained in the agreement. The City filed a cross motion for summary judgment. The trial court denied Helgesons' motion and granted the City's motion:

> [T]he court concludes that there is no genuine issue as to any material fact in this case, and that the Defendant is entitled to summary judgment of dismissal as a matter of law based upon the theories of statute of limitations which began to run when the settlement agreement was executed and upon the doctrine of estoppel.

The Helgesons appeal.

## I

### VALIDITY OF MEDICAL BENEFITS WAIVER

In arguing that the trial court erred in denying their motion for summary judgment, the Helgesons' principal contention on appeal is that the settlement, which contained a waiver of the right to payment of medical services under RCW 41.26.150, was void ab initio.[4]

---

[4] A contract that is "void ab initio" is "null from the beginning if it seriously offends law or public policy in contrast to a contract which is merely voidable at

■  Under the usual summary judgment standard, our review of this issue is de novo. *See Department of Labor & Indus. v. Fankhauser*, 121 Wn.2d 304, 308, 849 P.2d 1209 (1993). The Helgesons rely on *Vallet* as support for their position that the settlement was void ab initio. In *Vallet*, a former police officer sought a pension increase under an amendment to the retirement statute that had become effective during his employment. Before retiring, the City of Seattle required Vallet to make a written election as to which pension law he wanted to retire under — the 1915 pension law, which was in effect when he began employment, or the 1961 amendment to the pension law, which was in effect when he retired. *Vallet*, at 14-15. On appeal, the court rejected the City's argument that this written election constituted a waiver of any claim for an increased pension under the later amendment as a matter of law. Instead, the court held that "a civil servant must be paid for his services the amount prescribed by law and that any agreement to accept a lesser sum is contrary to public policy and hence is void." *Vallet*, at 15.

To determine whether Vallet was entitled to have his pension calculated according to the most beneficial provisions contained in both the 1915 and 1961 retirement statutes without the concomitant detriments contained in the 1961 statute, the court applied the principles derived from *Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956) and *Dailey v. Seattle*, 54 Wn.2d 733, 344 P.2d 718 (1959). In those cases, the court, applying a contract analogy to public pension systems, held that employees who accept positions with retirement systems contract "for a substantial pension" and are entitled to receive that pension when they have "fulfilled the prescribed conditions". *Vallet*, 77 Wn.2d at 20 (quoting *Bakenhus*, 48 Wn.2d at 701-02; citing *Dailey*, 54 Wn.2d at 738-39). In so contracting, public employees are deemed to accept any reasonable and equitable legislative modifications to the pension plan that are enacted for the purpose of

the election of one of the parties to the contract." Black's Law Dictionary 1574 (6th ed. 1990).

maintaining the flexibility and integrity of the plan. *Vallet*, 77 Wn.2d at 20-21 (citing *Bakenhus*, 48 Wn.2d at 701-02; *Dailey*, 54 Wn.2d at 738-39). To be found reasonable, any modification operating to the detriment of the employee should be coupled with a comparable benefit. *Vallet*, 77 Wn.2d at 20 (citing *Bakenhus*, 48 Wn.2d at 701-02). Based on these principles, the *Vallet* court held that if the modifications are reasonable and equitable, "the pensioner derives his right to a pension from the latest law and he must retire thereunder." *Vallet*, at 21. The court then determined that the 1961 amendments were reasonable and equitable modifications to the 1915 act and, hence, that Vallet was required to retire thereunder. *Vallet*, at 21-22.

In this case, the Helgesons contend that their waiver of the right to payment of medical services under RCW 41.26.150 was void as an "agreement to accept a lesser sum" for service than "prescribed by law". We disagree.

The Helgesons' argument overlooks the critical distinctions between the way that "vesting" is used in the retirement system context. In *Frank v. Day's, Inc.*, 13 Wn. App. 401, 405, 535 P.2d 479 (1975), the court explained:

> The term "vesting" embodies several concepts and has several different meanings. An employee has a vested right in a pension or retirement *system* upon becoming a qualified employee, and that system cannot be altered to his detriment without corresponding benefit to him. *Dorward v. ILWU-PMA Pension Plan*, [75 Wn.2d 478, 452 P.2d 258 (1969)]; *Bakenhus v. Seattle, supra*. A vested right *to payment*, however, does not arise until the contractual conditions for payment set out in an agreement have been met. *Jacoby v. Grays Harbor Chair & Mfg. Co.*, [77 Wn.2d 911, 468 P.2d 666 (1970)]; *DeRevere v. DeRevere*, 5 Wn. App. 741, 491 P.2d 249 (1971).

Mindful of the distinct uses of the term "vesting", we read *Vallet* to stand for the proposition that an agreement in which a public employee waives his or her *vested right to participate* in an applicable retirement system is void as against public policy. However, *Vallet* does not apply to those agreements in which a public employee waives the right to seek payment of benefits to which the employee does not have a *vested right to payment* because he or she arguably

has not yet met the contractual conditions for payment. In such a situation, where the right to payment is disputed, the public policy in favor of settlements is controlling. As one court aptly stated:

> A settlement is a compromise voluntarily agreed to by the parties. Each party generally accepts something less than that to which he believes he is entitled based on a decision that the compromise is more advantageous to him than the sum of the risks and benefits involved in pursuing the claim. . . .
>
>    . . .
>
>    . . . [The employee] cannot now request additional monetary relief merely because he is dissatisfied with the amount he voluntarily agreed to accept in the settlement . . ..

*Chadwick v. Northwest Airlines, Inc.*, 33 Wn. App. 297, 301, 654 P.2d 1215 (1982) (upholding a settlement agreement in which a private employee agreed not to file a claim for unemployment compensation, workers' compensation, or discrimination in exchange for reinstatement) (quoting *Strozier v. GM Corp.*, 635 F.2d 424, 425-26 (5th Cir. 1981)), *aff'd*, 100 Wn.2d 221, 667 P.2d 1104 (1983).

In this case, the *Vallet* rule against waiver does not apply because Helgeson did not waive any right to participate in the LEOFF I retirement system. The settlement will not be void as against public policy unless Helgeson had a vested right to payment of medical services at the time the settlement was executed.

To have a vested right to payment of medical services, LEOFF I members who retire on account of duty disability must meet the requirements set out in RCW 41.26.120, while those who retire on account of service 'must meet the requirements set out in RCW 41.26.090.

In this case, the City contested the Local Board's decision to grant Helgeson disability retirement benefits. In exchange for the City's agreement to forgo its challenge of Helgeson's right to *any* payment of benefits, Helgeson agreed to waive his contingent right to payment of certain benefits for the certainty of receiving what were otherwise contingent benefits. Because the settlement resolved an

apparently legitimate controversy concerning whether Helgeson had met the contractual conditions for duty disability retirement set forth in RCW 41.26 and therefore had a *vested right to payment* of medical benefits, it was not void as against public policy on this basis.

Helgeson suggested for the first time at oral argument a new basis for vesting. He claims that he had a vested right to the payment of medical services based on years of service. We permitted the parties to submit supplemental briefing on this issue.

■ In deciding whether Helgeson met the statutory requirements of RCW 41.26.090, the parties dispute which version of RCW 41.26.090 applies to this case. The Helgesons baldly assert that the 1970 version of RCW 41.26.090 governs. However, because the Helgesons do not even contend that the 1972 amendments, which were in effect when Helgeson was terminated, were unreasonable or inequitable, we conclude that the 1972 amendments apply.[5] *See Vallet*, 77 Wn.2d at 21. Under these amendments, to be eligible for service retirement:

(1) Any member having five or more years of service and having attained the age of fifty years shall be eligible for a service retirement allowance and shall be retired upon his written request effective the first day following the date upon which the member is separated from service.

(2) Any member having five or more years of service, who terminates his employment with any employer, may leave his contributions in the fund. Any employee who so elects, upon attaining age fifty, shall be eligible to apply for and receive a service retirement allowance based on his years of service, commencing on the first day following his attainment of age fifty. . . . *Any member selecting this optional vesting with less than twenty years of service shall not be covered by the provisions of RCW 41.26.150 . . ..*

(Italics ours.) Former RCW 41.26.090 (Laws of 1972, 1st Ex. Sess., ch. 131, § 6).

To decide whether Helgeson had a vested right to payment of medical services based on service, we must rely on

---

[5]The 1972 amendments, filed on February 25, 1972, expressly state that they are effective immediately. Laws of 1972, 1st Ex. Sess., ch. 131, § 11. Helgeson was discharged in October 1972.

two facts not expressly a part of the record, but to which the parties agree: (1) Helgeson was born in 1930 and (2) Helgeson opted to leave his contributions in the LEOFF fund under the optional vesting provision, RCW 41.26.090(2).

Based on these uncontroverted facts, it is clear that Helgeson did not have a vested right to the payment of medical services under RCW 41.26.090(2) when the 1978 settlement was executed because he was not 50 years old and had only 9 years of service.[6]

Thus, because Helgeson did not have a vested right to payment of medical services on account of duty disability or service, we conclude that the settlement, in which the Helgesons waived their right to seek payment of medical services under RCW 41.26.150 in exchange for the City's promise not to contest the grant of duty disability retirement, was not void ab initio.

## II

### STATUTE OF LIMITATIONS

In light of our holding that the settlement was not void ab initio, we next address whether the trial court properly decided that no genuine issue of material fact exists as to whether the Helgesons' challenge to the settlement is barred by the statute of limitations.

As a preliminary matter, we must first decide the applicable statute of limitations period. Helgeson contends that RCW 41.26.150 should be interpreted as providing that no statute of limitations bars an action challenging the validity of a waiver of disability retirement medical benefits, while the City contends that the limitations period is 3 years.

■ ■ The Washington Supreme Court held that "[a] 3-year statute of limitations applies to actions alleging a breach of state employee pension rights." *Bowles v. Depart-*

---

[6]We note that even if the 1970 amendments apply, Helgeson had no vested right to payment of medical services when the settlement was executed because he was not 50 years old. *See* former RCW 41.26.090(2) ("[a]ny member selecting this optional vesting shall not be covered by the provisions of RCW 41.26.150 or 41.26.160 until the attainment of the age of fifty") (Laws of 1970, 1st Ex. Sess., ch. 6, § 4).

*ment of Retirement Sys.*, 121 Wn.2d 52, 78, 847 P.2d 440 (1993) (citing *Noah v. State*, 112 Wn.2d 841, 774 P.2d 516 (1989)); *see also Martin v. Spokane*, 55 Wn.2d 52, 56, 345 P.2d 1113 (1959) (applying a 3-year statute of limitations period to a police officer's claim for pension payment shortages). The *Bowles* court further held that the "limitations period begins to run upon the employee's retirement from service". *Bowles*, at 78.

Because the Helgesons, in effect, are claiming that the settlement constituted a breach of their right to the payment of medical services under RCW 41.26, we apply a 3-year statute of limitations here. Accordingly, the trial court did not err in ruling that, as a matter of law, the Helgesons' claim is barred by the statute of limitations because they did not file suit until 14 years after the settlement was executed.[7]

The Helgesons contend that, even under a 3-year statute of limitations, a genuine issue of material fact exists as to whether the City is estopped by its actions from asserting the statute of limitations as a defense.

The doctrine of estoppel precludes the assertion of the statute of limitations as a defense where the defendant has "*fraudulently* or *inequitably* invited a plaintiff to delay commencing suit until the applicable statute of limitation has expired". *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 885, 719 P.2d 120 (1986). However, estoppel does not excuse the plaintiff's failure to bring the action when the inducement not to commence suit has ceased before the expiration of the limitation period and in sufficient time for the plaintiff to bring an action. *Central Heat, Inc. v. Daily Olympian, Inc.*, 74 Wn.2d 126, 135, 443 P.2d 544, 44 A.L.R.3d 750 (1968).

---

[7]We reject Helgeson's argument that *Bowles* stands for the proposition that the 3-year statute of limitations only bars "recovery for damages incurred more than three years to the date" of the filing of the complaint. *Bowles* clearly held that the statute of limitations begins running when the employee retires from service. Under that rule, the court affirmed the trial court's decision limiting the plaintiff class to those employees who had not yet retired or who had retired within 3 years preceding the filing of suit. *Bowles*, at 78-79.

It is the Helgesons' position that the City inequitably induced them not to file suit within the limitations period by concealing information about the possible invalidity of the medical benefits waiver. As support, the Helgesons claim that they did not receive Williams' 1975 letter to Allendoerfer in which Williams opined that the waiver of medical benefits would be found void.

We reject this argument. First, the Helgesons fail to identify any action by Marysville which had prevented them from bringing their cause of action within the limitations period, but which later changed, enabling them to finally bring their claim in 1992. Moreover, even if the City intentionally kept the information from the Helgesons,[8] the record clearly demonstrates that the Helgesons had actual notice concerning the uncertainty of the waiver's validity long before the statute of limitations expired. After the settlement was executed, but before the LEOFF Board entered its final order, the Helgesons received correspondence on three separate occasions which raised this issue. Two of these letters asked for any objections prior to the entry of the final order. In addition, after the final order was entered, the Helgesons received another letter from the LEOFF Board which stated that given its lack of jurisdiction over medical benefits, its position on the enforceability of the settlement was irrelevant. The Helgesons' receipt of these letters, which clearly raised the issue of the settlement's validity, demonstrates that Marysville did not inequitably induce them not to file suit within the statutory period. Thus, we conclude that no genuine issue of material fact exists as to whether Marysville is estopped from relying on the statute of limitations.[9]

---

[8]The Helgesons point to no evidence indicating that the City *purposefully* concealed Williams' letter. Although Helgeson's poor health and bleak financial situation may have influenced the Helgesons' decision to enter into the settlement, they fail to show that the City was even aware of, let alone took advantage of, their situation in order to prevent them from inquiring into the legal effect of the waiver.

[9]Furthermore, the fact that the Helgesons sent a medical bill to the City for payment a few years before filing suit in 1992 indicates a belief on their part that the City might be responsible for such payments.

We also reject the Helgesons' contention that Marysville is precluded from relying on the statute of limitations as a defense because the City breached what they allege to be its fiduciary duty to act in good faith in providing medical benefits. As a result of this alleged breach of fiduciary duty, the Helgesons contend that the payments for medical services are held in constructive trust for their benefit.

For the reasons discussed above, the Helgesons have failed to prove that the City intentionally misled them about the enforceability of the medical benefits waiver, thereby breaching its fiduciary duty. Consequently, we need not decide whether, as the Helgesons claim, the fiduciary duty of good faith owed by a private insurer also applies to the City. *See Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 916-17, 792 P.2d 520, 7 A.L.R.5th 1014 (1990) (an insurer must make a good faith investigation into the facts before denying coverage); *see* RCW 48.01.030.[10]

Finally, the Helgesons contend that settlement never took effect due to the nonoccurrence of a condition precedent. Specifically, they claim that the LEOFF Board failed to enter an order approving the terms of the settlement as required by the settlement. However, we need not reach this issue because it too is barred by the statute of limitations.[11]

Because we affirm summary judgment in favor of the City based on the statute of limitations, we need not address the trial court's application of the doctrine of equitable estoppel in favor of the City.

Affirmed.[12]

BECKER, J., concurs.

---

[10]We note, however, that RCW 41.26, upon which the Helgesons rely, applies specifically to private insurers.

[11]In any event, it seems logical that the purpose of the provision was to ensure that the State would continue to pay Helgeson's retirement allowance. Moreover, as the City notes, the LEOFF Board did approve the medical benefits waiver and fulfilled the condition precedent as follows: "That said settlement by the parties is on file herein, and by this reference is incorporated herein in its entirety."

[12]Accordingly, the Helgesons' request for attorney's fees based on equity and RCW 49.52, the Wages — Deductions — Contributions — Rebates Act, is denied.

GROSSE, J. (concurring) — I concur in the result reached by the majority but write separately to clarify my reasoning in that regard. In my opinion the rights that we deal with in this dispute were vested, as that term is understood and used in analyzing pension laws and pension rights. However, the right to status as a disabled firefighter is subject to dispute, as it was in the instant case, and is not vested.

Helgeson settled a bona fide dispute over his status, received a valuable benefit, a disability pension, but gave up any claim to the medical benefits that were attendant to his status as a disabled firefighter. Both parties to the dispute had a great deal at stake. If Helgeson did not prevail he would receive nothing under the act but a right to future benefits pursuant to the alternative vesting provisions of RCW 41.26.090(2), subject to certain conditions, and certainly would not have been entitled at the time of his discharge to any medical benefits. Conversely the City of Marysville, if it did prevail, would have owed Helgeson nothing except possible future benefits. One thing that appears certain on this record is that neither party to this appeal had in mind these future benefits under RCW 41.26.090(2) at the time of settlement or at the time of trial and appeal of this matter. Until raised by this court, by this writer, all were concerned with Helgeson's disability status and the validity of his actions in resolving the dispute with regard to that status.

*Vallet v. Seattle*, 77 Wn.2d 12, 459 P.2d 407 (1969) does stand for the proposition that a pension claimant cannot be put to an election with respect to his pension rights that is tantamount to a waiver of any of those rights as they are prescribed by the applicable pension laws. *Vallet* does not stand for the proposition that there is a vested right to have a particular status under the applicable laws. Indeed, when one carefully reviews the *Vallet* decision, it is apparent that it was Vallet's status as a member of the system that was at is sue, and one on which he did not prevail, at least in part.

Here, Helgeson did not retire; he was discharged. Had he not sought disability status, he would have been put to an

election by the statute as to whether to retain membership in the system under RCW 41.26.090(2) with whatever rights and benefits were attendant thereto, or to take his contributions and move on. On this record we do not know what Helgeson did or would have done with respect to his election. He may or may not be a current member of the retirement system under this section. Only if he is does he have any claim to medical benefits and then only if the 1972 amendments do not apply. We cannot reach the issue of the effect of the 1972 amendments for two reasons: First, we do not know Helgeson's status under RCW 41.26.090(2). Second, we do not know whether the changes wrought by those amendments would apply to a person otherwise qualified under RCW 41.26.090(2) leaving employment as a firefighter prior to the effective date of the amendments. An answer to the second question would require the vested rights balancing of benefits and burdens required by *Vallet v. Seattle, supra, Bakenhus v. Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956), and *Dailey v. Seattle*, 54 Wn.2d 733, 344 P.2d 718 (1959), issues not raised, briefed, or argued by the parties. Here, I disagree with the majority insofar as it attempts to determine Helgeson's rights under RCW 41.26.090(2) and whether they were vested.

Thus, we are left with only the issue of the scope of *Vallet*'s proscription of waivers. On this issue I am in full accord with the majority opinion that the public policy in favor of settlements is controlling. To the extent that a settlement of a dispute as to an employee's status under an applicable pension law is otherwise valid, it is not rendered invalid because the employee may by the fact of settlement give up some other right contingent on that settlement, such as the right to medical payments as a disabled member.